Lindsey W. HALE, Individually and d/b/a Hale Maintenance and Installation, and Hale Maintenance and Installation, George Tabor and Stanley Tabor, Appellants (Defendants Below),

v.

Eugene KEMP and Jennifer Kemp, Appellees (Plaintiffs Below).

and

George TABOR, Cross–Appellant (Cross–Plaintiff Below),

v.

Lindsey W. HALE, Individually and d/b/a Hale Maintenance and Installation, and Hale Maintenance and Installation, Cross–Appellee (Cross–Defendant Below).

No. 82S01–9109–CV–743.

Supreme Court of Indiana.

Sept. 23, 1991.

John B. Drummy, Jennifer Staton Stoesz, Kightlinger & Gray, Indianapolis, for appellants Hale.

Curt J. Angermeier, Evansville, for appellants Tabor.

Daniel J. McGinn, Gerling Law Offices, Evansville, for appellees Kemp.

DICKSON, Justice.

This personal injury action presents issues regarding the claim of a casual employee that he falls outside the exclusivity provision of Indiana's worker's compensation laws both as to his employer and as to another for whom he was allegedly a "borrowed servant."

This action was commenced by Eugene Kemp and his wife Jennifer. Kemp was injured while working as an employee of George Tabor, who had told Kemp to help Lindsey W. Hale, proprietor of Hale Maintenance and Installation, in the erection of steel archways for Tabor. The present action by Kemp seeks damages from George Tabor, Stanley Tabor, and Hale and his company. George Tabor filed a cross-claim for indemnity against Hale.

The trial court ruled upon various motions for summary judgment and certified the following included question of law for interlocutory appeal pursuant to Ind. Appellate Rule 4(B)(6):

A. Whether Defendant Eugene Kemp was an employee of Hale within the meaning of the Indiana Workmen's Compensation Act under the circumstances in question at the time of the mishap giving rise to this cause of action.

B. Whether a borrowed servant relationship was created between Hale and Plaintiff Eugene Kemp as a result of the understood facts that Plaintiff Eugene Kemp had been hired by Defendant George Tabor to work around Tabor's premises and had been instructed by Defendant George Tabor to stop the work he was then and there performing and do whatever Hale told him to do when summoned by Hale.

If Plaintiff Eugene Kemp was a borrowed servant of Hale at the time in question, was that relationship between Eugene Kemp and Hale such that Eugene Kemp's right to recover is controlled by the Indiana Workmen's Compensation Act so as to preclude Eugene Kemp from maintaining a tortious cause of action against Hale.

C. Whether Plaintiff Eugene Kemp's employment with Defendant George Tabor was casual and not in the usual course of the trade, business, occupation, or profession of Defendant George Tabor.

D. Whether Plaintiff Eugene Kemp's employment with Hale was casual and not in the usual course of the trade, business, occupation, or profession of Hale.

E. Whether there existed an implied contract of indemnity between Defendant George Tabor and Hale.

Hale initiated this appeal, presenting certified questions A, B, and D. Hale contends that the undisputed facts establish Eugene Kemp as a borrowed servant of Hale working in the usual course of Hale's business at the time of the accident, and thus Kemp is limited to the remedy provided under the Indiana Worker's Compensation Act. Ind.Code § 22–3–2–6. Certified questions C and E are presented by the Tabors in their appeal and cross-appeal. They assert that under the Act Kemp's employment status for George Tabor precludes Kemp's negligence actions against George and Stanley Tabor. The Tabors further contend that if Kemp is found to be within the Worker's Compensation Act as a borrowed servant for Hale at the time of the accident, then Kemp must be deemed to be in the joint service of both Hale and George Tabor so as preclude Kemp's action against Tabor. In addition, Hale and George Tabor disagree as to the indemnity issue.

The Court of Appeals issued a memorandum decision affirming the trial court's summary judgment ruling which found Kemp's action against Tabor not precluded by the Workmen's Compensation Act. However, as to Kemp's claim against Hale, it concluded that Kemp was engaged in work which was a part of Hale's usual course of business and thus Kemp's remedy against Hale is limited to that provided by the Worker's Compensation Act 548 N.E.2d 175. The Court of Appeals also held that the existence of questions of material fact precludes summary judgment on the indemnity issue.

■ Because the specific questions certified on interlocutory appeal arise in the context of summary judgment proceedings, our review applies the same standard as a trial court which will grant summary judgment only where there is no genuine issue as to any determinative material fact, resolving all factual doubts against the moving party. *Allied Resin Corp. v. Waltz* (1991), Ind., 574 N.E.2d 913.

The undisputed facts indicate that Eugene Kemp suffered injuries from electrical shock while helping move a steel archway when contact was made with overhead powerlines. This occurred on the premises of George Tabor, whose residence was located next to his painting contractor business. Recently married and with his wife expecting, the 17–year–old Kemp had sought additional work to supplement the income from his regular job at a printing company. He obtained employment from George Tabor to do odd jobs on occasional Saturdays. These jobs included helping in the installation of two steel archways, one over each entrance to the "U"–shaped driveway that passed over and connected Tabor's residence and business premises, cleaning and preparing the brick driveway for application of a sealant, cutting grass, and "various things." Tabor stated that he did not intend to use Kemp "in the painting" and that "I can't work him in my business." However, among the odd jobs done before the accident, Kemp did briefly work cleaning a bathroom and sweeping the floor in the office portion of Tabor's painting contractor business building. Kemp was injured on the second Saturday of his employment for Tabor.

The accident occurred as one of the archways was being moved by a forklift operated by Hale. Kemp was steadying the archway and Tabor's son and employee Stan Tabor was also assisting. Tabor had hired Hale to weld and install the archways with the assistance of one of Hale's employees, with Tabor agreeing to provide a couple of men to help with the moving and erection of the archways. Hale had previously done considerable mechanical, repair, and engine work on Tabor's vans and automobile, and Tabor hired Hale for work on the archways because Hale had done steel welding before. Eighty or ninety percent of the business of Hale Maintenance and Installation Company deals with repair and maintenance of automobiles. Of the approximately 5500 projects undertaken by Hale's business, about four had involved the fabrication or erection of steel members. All the work performed in connection with the Tabor archways was under the control and direction of Hale. On the morning of the accident, George Tabor had instructed Kemp to interrupt his other tasks and help

Hale with the archways when needed. In providing assistance with the archways, Kemp considered himself to be an employee only of Tabor who was following Tabor's instructions to help with the archways when requested by Hale.

In pertinent part the applicable provisions from our worker's compensation statutes are as follows:

IC 22–3–2–6. The rights and remedies granted to an employee subject to IC 22–3–2 through I.C. 22–3–6 on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death, except for remedies available under I.C. 16–7–3.6.[1]

IC 22–3–6–1(b). "Employee" means every person, including a minor, in the service of another, under any contract of hire or apprenticeship, written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation, or profession of the employer.

To resolve whether Kemp's relationships to Hale and to George Tabor fall within the exclusive worker's compensation act benefits, we look to the statutory definition of "employee" above. To fall within the exception, the employee must be one whose employment is not only casual but also not in the usual course of the employer's business. An employee otherwise covered is not excluded unless both of these elements of the exception apply.

■ The Tabors argue that worker's compensation coverage applies to persons employed on a part-time or "as needed" basis, that in doubtful cases the Act should be presumed to apply, and that Kemp was hired as a part-time janitor or maintenance man for the painting contractor business. However, the facts in the present case do not support Tabors' claims, particularly in view of George Tabor's express declaration

that Kemp was not hired to work in his business. We find no genuine issue regarding this fact. The general nature of Kemp's employment by George Tabor for weekend odd jobs was both casual and not in the usual course of George Tabor's business as a painting contractor. The trial court did not err in granting partial summary judgment to permit the Kemps to assert their common law action against the Tabors.

Hale contends that, as to him and his company, Kemp's action is precluded because Kemp falls within the definition of "employee" under the Worker's Compensation Act. Hale argues that Kemp was in Hale's service under a contract of employment implied by reason of the "borrowed servant" rule. *Fox v. Contract Beverage Packers, Inc.* (1980), Ind.App., 398 N.E.2d 709; *Loehrlein v. Floyd Staub, Inc.* (1971), 150 Ind.App. 598, 276 N.E.2d 865; *Jackson Trucking Co. v. Interstate Motor Freight System* (1952), 122 Ind.App. 546, 104 N.E.2d 575. It is Hale's claim that Tabor hired Kemp in part to fulfill Tabor's obligation to provide two men to assist Hale in the installation of the archways, and that Tabor instructed Kemp to follow Hale's directions, thus making Kemp a special employee of Hale and not eligible for exclusion under the Act because the work was in the usual course of Hale's business.

Kemp responds that there was no express or implied contract between Hale and Kemp and that the facts demonstrate the absence of various other indicia of a master-servant relationship between Hale and Kemp. Kemp asserts that an employee who is merely directed to aid another employer does not thereby become the special employee or "borrowed servant" of the second employer. Kemp also argues that, because he was not subject to the Worker's Compensation Act limitations in his relationship with George Tabor, the same result must apply to his relationship with Hale, who should not acquire greater

**1.** Ind.Code §§ 16–7–3.6–1 to 20 establish a procedure for compensation for victims of violent crimes. In addition, Ind.Code § 22–3–2–13 grants to employees covered by workers compensation the right to bring third-party damage actions against persons other than their employer or co-workers.

rights and liabilities as to Kemp than those possessed by Tabor.

■ To determine if an employer-employee relationship exists which may subject an employee to the Worker's Compensation Act so as to bar his common law claim against the special employer to whom he was "loaned," the following factors have been enumerated: (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. *Fox v. Contract Beverage Packers, Inc.* (1980), Ind. App., 398 N.E.2d 709. As noted by Kemp, this Court has also recently spoken regarding such determination. In *Rensing v. Indiana State Univ. Bd. of Trustees* (1983), Ind., 444 N.E.2d 1170, 1173, we declared:

> [T]he primary consideration is that there was an intent that a contract of employment, either express or implied, did exist. In other words, there must be a mutual belief that an employer-employee relationship did exist.

In the present case, the accepted facts favor Hale's "borrowed servant" claim only as to factor (5), control. In working with the steel arches, Hale had the right to control and direct Kemp. Citing *Beach v. Owens–Corning Fiberglas Corp.* (N.D.Ind. 1982), 542 F.Supp. 1328, *aff'd on appeal,* (7th Cir.1984), 728 F.2d 407, Hale argues that Kemp's acquiescence in direct supervision by Hale is sufficient to demonstrate an implied employment contract between Hale and Kemp. In contrast to Kemp, however, the plaintiff in *Beach* was assigned by his general employer to work exclusively for the special employer at the latter's plant for several months, subject entirely to the assignments and control of the special employer as to the place, manner, and boundaries of work. We do not find the result in *Beach* to be instructive in the case at bar. Likewise, further comparison with facts presented in other borrowed servant cases is of questionable value.[2]

Even if we assume, *arguendo*, such an implied employment contract, the question remains whether Kemp is excluded from the Act's limitations because his employment was both casual and not in the usual course of Hale's business. Of particular significance to this analysis is the use in Ind. Code § 22–3–6–1(b) of the phrase "whose employment." The statute does not employ "whose duties" in assessing the applicability of the exception. Rather it tends to focus upon the worker's general overall employment, which in this case is Kemp's employment to do Saturday odd jobs for George Tabor.

From the facts before us, we find that there is no genuine issue of material fact regarding the relationship of Kemp's general employment and Hale's usual course of business. Kemp's employment was not in the course of Hale's business. Because Kemp's employment was also casual, he is therefore excluded from the Ind.Code § 22–3–6–1(b) definition of employees subject to the Worker's Compensation Act and may assert a common law claim against Hale.

■ In response to the specific questions certified by the trial court for interlocutory appeal, we therefore determine: (A) that Kemp was not an employee within the meaning of the Indiana Worker's Compensation Act with respect to Hale; (B) that the questions related to the alleged borrowed servant relationship need not be addressed; (C) that Kemp's employment with George Tabor was both casual and not in the usual course of Tabor's trade, business,

---

2. Cases involving the borrowed servant question are not easily harmonized, as noted and discussed in considerable detail by Judge Hunter in *N.Y. Cent. R.R. Co. v. Northern Ind. Pub. Serv. Co.* (1966), 140 Ind.App. 79, 86–91, 221 N.E.2d 442, 447–449:

> We might attempt to discuss all these cases in an effort to differentiate and harmonize them. However, this would merely add to the confusion. For the most part these decisions are irreconcilable and we do not feel that we could be any more successful than those jurists who preceded us.

140 Ind.App. at 89, 221 N.E.2d at 448.

occupation, or profession; and (D) that Kemp's employment with Hale was both casual and not in the usual course of Hale's trade, business, occupation, or profession. With respect to question (E) regarding whether there existed an implied contract of indemnity between Tabor and Hale, in view of our determination of the other issues and the variety of results which may occur in the future resolution of Kemp's common law actions against the Tabors and Hale, we decline to provide interlocutory review. App.R. 4(B)(6).

Transfer is granted. This cause is remanded to the trial court for further proceedings consistent with this opinion.

GIVAN and KRAHULIK, JJ., concur.

SHEPARD, C.J., concurs except as to the summary judgment granted against the Tabors. He believes this was erroneous because Kemp was an employee of Tabor.

DeBruler, J., dissents.