Stephen D. ARGABRIGHT and Brenda K. Argabright, Appellants–Plaintiffs,

v.

R.H. MARLIN, INC., Appellee–Defendant.

No. 49A05–0305–CV–220.

Court of Appeals of Indiana.

March 16, 2004.

Charles G. Reeder, Holland & Holland, Indianapolis, IN, Attorney for Appellants.

Edward F. Harney, Jr., Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorney for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellants–Plaintiffs, Stephen D. Argabright (Stephen) and Brenda K. Argabright (collectively "the Argabrights"), appeal the trial court's grant of Appellee–Defendant, R.H. Marlin's Inc.'s (Marlin), Motion to Dismiss pursuant to Ind. Trial Rule 12(B)(1) on the Argabrights' Complaint for injuries sustained on the job.

We affirm.[1]

*ISSUE*

The Argabrights raise one issue on appeal, which we restate as follows: whether the trial court correctly determined that Stephen, an employee of the Millgard Corporation (Millgard), is a co-employee of Richard Austin (Austin), the operator of

Marlin's crane, such that the Argabrights' claim against Marlin is barred by the exclusivity provisions of the Indiana Worker's Compensation Act and, thus, was properly dismissed by the trial court for lack of subject matter jurisdiction.

*FACTS AND PROCEDURAL HISTORY*

On April 15, 1997, Stephen, an employee of Millgard, was working at the Federal Express construction site, located at the Indianapolis International Airport. Millgard's work at the construction site required the use of two cranes: a drill crane and a service crane. Although Millgard had provided its own drill crane, it contracted with Marlin for the hire of a service crane. Besides the service crane, Millgard's equipment contract with Marlin included the services of an operating engineer for the service crane and an oiler to assist the service crane engineer. Marlin hired Austin out of the Operator's Union Hall and assigned him to the Federal Express worksite to work as the service crane engineer. Millgard paid Marlin for the equipment and labor pursuant to the terms of the contract.

The service crane's purpose was to insert steel casements into drilled holes to create foundational support of the Federal Express project. To protect the concrete pad below the service crane from damage, the service crane was required to move around on large, heavy wooden mats. As the service crane advanced on the worksite, Austin lifted one of the wooden mats with the boom, swung the boom to the front-end of the crane, and lowered the mat in place in front of the service crane. After the mat was placed, the service crane would move forward. Another mat was then lifted from behind the service

1. Appellants' Motion for Appellate Alternative Dispute Solution and Motion for Oral Argument are hereby denied.

crane and placed in front. This leap-frogging process was repeated until the crane reached its intended destination. Stephen and another laborer assisted Austin with this procedure.

On April 15, 1997, when Stephen was participating in this leap-frogging process, the service crane backed partially off one of the mats while attempting to place another mat in front. The service crane tilted backwards, swinging the mat secured to the boom back towards the crane. Stephen was injured when the hanging mat collided with him.

On January 22, 1998, the Argabrights filed a Complaint for damages against Shiel–Sexton Co., Inc, the main contractor of the Federal Express project, and Marlin Crane, Inc. Subsequent to the commencement of the action, Argabright's counsel determined that Marlin Crane, Inc. was not involved in the construction site incident. As a result, on February 4, 1998, contemporaneously to the filing of a Notice of Dismissal with regards to Marlin Crane, Inc., the Argabrights filed an Amended Complaint for Damages wherein Marlin was joined with Shiel–Sexton. On September 16, 1998, Marlin filed a Motion to Dismiss pursuant to T.R.12(B)(1). On March 1, 1999, the trial court heard evidence on this Motion, and subsequently denied it on March 4, 1999.

On March 11, 2002, Marlin filed its Motion for Summary Judgment along with its Memorandum designating specific evidence. On May 21, 2002, the Argabrights filed their Memorandum in Opposition to the Motion for Summary Judgment. On December 5, 2002, Marlin filed its Reply in support of its Motion, together with additional designated evidence. In this Reply, Marlin requested the trial court to convert its Motion for Summary Judgment to a T.R.12(B)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction. On January

29, 2003, the Argabrights filed a Supplemental Designation of Evidence in opposition to Marlin's pending motion.

On the same day, January 29, 2003, the trial court conducted a hearing on Marlin's Motion. During this hearing, Marlin verbally affirmed its request to convert its Motion to a T.R.12(B)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction. On March 17, 2003, the trial court granted Marlin's Motion and dismissed the case by issuing its Order, which stated, in pertinent part, as follows:

> This matter comes before the [c]ourt on [Marlin's] Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Rule 12(B)(1) of the Indiana Rules of Trial Procedure.
>
> And the [c]ourt, having considered said Motion, supporting and opposing Memoranda, supporting and opposing evidence and having heard oral arguments therein, now finds such Motion should be, and hereby is, GRANTED.
>
> IT IS THEREFORE ORDERED that this matter is hereby dismissed in its entirety pursuant to Rule 12(B)(1) of the Indiana Rules of Trial Procedure as the [c]ourt lacks subject matter jurisdiction.
>
> IT IS SO ORDERED.

(Appellant's App. p. 18).

The Argabrights now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

The Argabrights contend that the trial court erred in granting Marlin's Motion to Dismiss under T.R.12(B)(1). Specifically, they argue that Stephen and Austin, the service crane operator, were not co-employees of Millgard Corporation and, thus, their claim is not barred by the exclusivity provisions of the Indiana Worker's Compensation Act. Conversely, Marlin alleges that the designated evidence establishes

that Austin and Stephen were co-employees. Therefore, Marlin maintains that the Argabrights cannot pursue Marlin directly for the actions of Austin based upon a theory of respondeat superior.

*I. Standard of Review*

▮ It is well settled that when an employer defends against an employee's negligence claim on the basis that the employee's exclusive remedy is to pursue a claim for benefits under the Indiana Worker's Compensation Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under T.R.12(B)(1). *See Foshee v. Shoney's Inc.*, 637 N.E.2d 1277, 1280 (Ind. 1994). In *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind.2001), our supreme court clarified the standard for appellate review of a trial court's grant or denial of such a motion. The standard of review for T.R.12(B)(1) motions to dismiss is dependent upon what occurred in the trial court, *i.e.*, whether the trial court resolved disputed facts; and, if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id.* at 401.

▮ If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. *Id.* Under those circumstances, no deference is afforded to the trial court's conclusion because "appellate courts independently, and without the slightest deference to the trial court's determinations, evaluate those issues they deem to be questions of law." *Id.* (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind. 2000)). Thus, we review de novo a trial court's ruling on a motion to dismiss where the facts before the trial court are undisputed. *See id.*

▮ If the facts before the trial court are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. If an evidentiary hearing took place, we will give the trial court's factual findings and judgment deference. *See id.* (quoting *Menard, Inc. v. Dage–MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind.2000)). In reviewing the trial court's factual findings and judgment, we will only reverse if they are clearly erroneous. *Id.*

▮ However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded to the trial court's factual findings or judgment because, under those circumstances, a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." *Id.* Thus, we review de novo a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

In the present case, several facts before the trial court were in dispute and, just as important even for those facts not in dispute, the parties disagree about the inferences to be drawn from those facts. Further, both parties concede that the trial court did not conduct an evidentiary hearing; instead, it ruled upon a paper record consisting of the parties' designated evidence. Accordingly, in reviewing the factual findings as well as the conclusions of law in this case, we apply a de novo standard of review. *See id.* In so doing, we will affirm the judgment of the trial court on any legal theory the evidence of record supports. *See id.* at 401. However, the ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of the evidence is tipped against the trial court's findings. *Id.*

## II. Employer–Employee Relationship

 The Indiana Worker's Compensation Act (the "Act") provides the exclusive remedy for recovery of personal injuries arising out of and in the course of employment. Ind.Code § 22–3–2–6. Although the Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee. I.C. § 22–3–2–13. Here, Stephen contends that he is entitled to recover against Marlin because he was not a co-employee of Austin, and thus, he was not employed by Marlin at the time he was injured. Marlin, on the other hand, contends that an employee relationship existed between Stephen and Austin, and as such, the Act bars the Argabrights' claim.

 Determining whether an employer-employee relationship exists ultimately is a question of fact. *See id.* at 402. In making this determination, the factfinder must weigh a number of factors, none of which is dispositive. In *Hale v. Kemp,* 579 N.E.2d 63, 67 (Ind.1991), our supreme court identified these factors as: (1) the right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. These factors must be weighed against each other as part of a balancing test as opposed to a mathematical formula where the majority wins. *See GKN,* 744 N.E.2d at 402. When applying this balancing test, the greatest weight should be given to the right of the employer to exercise control over the employee. *See id.*

### A. Right to Discharge

The record establishes that Kevin Young (Young), Millgard's on-site supervisor, responsible for supervising Millgard's team on the worksite, testified during his deposition that, if Austin performed the work unsafely, he could ask Marlin to replace Austin. Likewise, Richard Millgard, Millgard's vice-president, stated in his deposition that he could call Marlin, inform them that Austin was acting in an irregular or unsafe way, and request a replacement for the service crane operator.

Although Millgard did not have the authority to terminate Austin's employment with Marlin, he could effectively terminate Austin's employment with Millgard by submitting a request to Marlin for a replacement. We have recognized a similar "indirect right of discharge" in *U.S. Metalsource Corp. v. Simpson,* 649 N.E.2d 682, 685 (Ind.Ct.App.1995) (finding that while one employer did not have the direct power to terminate employment, it could, and did, terminate employment by instructing the other employer that it no longer wanted a specific employee to work for them). *See also Degussa Corp. v. Mullens,* 744 N.E.2d 407, 413 (Ind.2001). Here, while Marlin, as owner of the service crane, would effectuate the termination of Austin, the operator of its crane, Millgard retained and could exercise an indirect right to discharge. Therefore, the right to discharge factor weighs in favor of a conclusion that Austin was Stephen's co-employee.

### B. Mode of Payment

The record shows that Millgard had no control over the amount or manner of payment to Austin; Austin was paid directly by Marlin. Accordingly, this factor points to a conclusion that Austin was not a fellow employee of Stephen.

### C. Supplying Tools or Equipment.

The undisputed evidence establishes that the service crane was owned and operated exclusively by Marlin and arrived fully equipped at the work site. On the other hand, the record also indicates that Millgard provided some of the rigging used on the service crane, which included the chokers, spreaders, nylon strings, and everything needed to pick up tools on the work site. Millgard further owned some of the mats used to move the service crane around the work site.

In *Davis v. Central Rent–A–Crane*, 663 N.E.2d 1177, 1180 (Ind.Ct.App.1996), this court found the factor to be met where the contractor supplied the hooks and chains used by the employee, even though the subcontractor, employee's employer, supplied the crane. Likewise, in the present case, since most of the equipment was provided by Millgard but used by Austin, this factor weighs in favor of a co-employee relationship.

### D. Belief of the Parties in the Existence of an Employer–Employee Relationship

Our review of the record discloses that Austin reported directly to Young at the work site. Young testified that he supervised both Stephen and Austin without making any distinction in their employment status. Austin's work hours would be set by Young, including any mandatory overtime. During the work day, Young would instruct Austin where to move the service crane and expected his entire crew, as well as Austin, to work as a team to timely finish the project.

We have previously held that an implied employment contract exists where it "was understood by both parties that the employee would be expected to work, at least to the extent of one day, or a period during that day when [employee] was needed at the plant of [employer]." *Fox v. Contract*

*Beverage Packers, Inc.*, 398 N.E.2d 709, 712 (Ind.Ct.App.1980), *trans. denied. See also Nowicki v. Cannon Steel Erection Co.*, 711 N.E.2d 536, 542 (Ind.Ct.App. 1999). In the case at bar, we determine that an implied employment contract existed. The relationship between Young and Austin was similar to the one between Young and Stephen. Furthermore, both parties understood that Austin would work at the Federal Express work site under Young's supervision and direction. Therefore, this factor weighs in favor of a co-employee relationship between Austin and Stephen.

### E. Control over the Means Used in the Results Reached

As we stated above, while "not dispositive, control is the most important factor when determining whether an employer-employee relationship exists." *GKN*, 744 N.E.2d at 405–06. In *Davis* we found sufficient control to demonstrate an employment relationship, when the employees of a crane lessee "directed [the crane operator] and determined which loads he lifted and how he lifted them." *Davis*, 663 N.E.2d at 1179. The crane operator could refuse to perform any acts he thought were dangerous and the lessee's employees could stop the crane operator if they felt his actions were improper. *Id.*

Similarly, here, Young testified that he instructed Austin where to move the service crane at the drill site, and that he directed Austin to place and remove steel casements in specified holes. The record shows that Austin had no discretion as to the tasks he performed, unless it was an unsafe procedure. However, the evidence also supports that Austin decided how to operate and move the service crane to accomplish the result desired by Young.

Based on the record before us, it is apparent that Millgard, through Young,

had control over the service crane in order to reach the required result. It is irrelevant that Austin was in sole control over the crane's movements, since Young decided the direction the service crane would move in and the work it would perform that day. Thus, we find the evidence sufficient to support this factor in favor of a fellow employee relationship.

### F. Length of the Employment

The record reflects that, prior to the accident, Austin had operated Marlin's service crane for four months, and was scheduled to work until the project was finalized. There is no evidence that Austin worked for another company during this time. Therefore, we find this factor in favor of an employee relationship between Austin and Stephen.

### G. Establishment of Work Boundaries

In *Degussa,* we held that "work boundaries" encompass mainly spatial boundaries, but might also indicate temporal and other boundary issues." *Degussa,* 744 N.E.2d at 414. To the extent that this factor implicates other types of boundaries, we have addressed those issues under the factors examined above and have determined that they favor the existence of an employment relationship. With respect to spatial boundaries, we find that Austin worked at the Federal Express jobsite under Young's direction. He reported to work at Millgard's part of the jobsite where he also received his instructions. This evidence points in favor of a fellow employee relationship between Austin and Stephen.

### H. Balancing the Seven Factors

The Agrabrights now draw our attention to a previous Marlin decision, *Williams v. R.H. Marlin, Inc.,* 656 N.E.2d 1145 (Ind. Ct.App.1995). However, *Williams* is clearly distinguishable from the situation at hand. In *Williams,* the general contractor, Pitt–Des Moines, Inc. (PDM), con-tracted with Marlin for the rental of a crane, crane operator, and an oiler. *See id.* at 1148. PDM rented the crane to assist its subcontractor, Real Mechanical, Inc. (Real) who had subcontracted part of the work to Irex–Centin Corporation (Centin). *See id.* Williams, an employee of Centin, was injured when a basket in which he was being lifted by the crane dropped several feet, causing multiple injuries. *See id.* After discussing in detail each of the *Hale* factors, we held that no employer-employee relationship between Marlin's crane operator and Centin existed and summarized the findings as:

> Centin did not agree to make payment, either directly or indirectly, for [the crane operator's] services or for the use of the crane, did not control any aspect of the [crane operator's] work or the manner in which he performed his job, and had no authority to terminate him. [The crane operator] believed that he was working under the supervision of PDM and concedes that it had the authority to remove [the crane operator] from the site if it became necessary to do so. Furthermore, the lease agreement between Marlin and PDM clearly states that the operator was under the full control of PDM

*Id.* at 1153. Unlike *Williams,* Millgard indirectly paid for the services of Austin, and directly supervised Austin's daily work, hours, and work boundaries. Moreover, distinguishable from Centin, Millgard had the authority to indirectly remove Austin from the work site.

Balancing the *Hale* factors and giving considerable weight to the element of control, we conclude that there is sufficient evidence to show that Austin and Stephen were fellow employees. *See Hale,* 579 N.E.2d at 67. Accordingly, we conclude that under the Act, Stephen is barred from bringing a claim for damages against Mar-

lin. *See* I.C. § 22–3–2–13. Consequently, we find that the trial court properly dismissed the Argabrights' action under T.R.12(B)(1), as it lacked subject matter jurisdiction to hear the case. *See GKN*, 744 N.E.2d at 402

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly granted Marlin's Motion to Dismiss pursuant to T.R.12(B)(1) on the Argabrights' Complaint for injuries sustained on the job.

Affirmed.

DARDEN, J., and BAILEY, J., concur.