Madan VERMA d/b/a Madan Construction Co., Inc., Shreeji Hospitality, Inc., Gatwood Crane Service, Inc., Third Party Plaintiff,

v.

D.T. CARPENTRY, LLC, Appellant–Third Party Defendant.

No. 45A03–0309–CV–344.

Court of Appeals of Indiana.

March 25, 2004.

Timothy M. Swan, Bruce P. Clark & Associates Munster, IN, Attorney for Appellant.

Patrick D. Duffy, Stone & Moore, Chartered Chicago, IL, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-third party defendant D.T. Carpentry (D.T.) appeals the trial court's grant of appellee-defendant Gatwood Crane Service's (Gatwood) motion to dismiss. D.T. raises two issues which we reorder as: whether the trial court erred when it allowed the introduction of the Standard Short Term Crane Rental Agreement (Agreement) into evidence and whether the trial court erred when it found that Gatwood's crane operator was a borrowed employee of D.T. Concluding that D.T. waived its argument regarding the admissibility of the Agreement and that the crane operator was a borrowed employee, we affirm.

## FACTS

On April 5, 1997, Gary Schmid,[1] an employee of D.T., was assisting in the process of hoisting trusses from the ground and placing them on the second floor of a hotel-in-construction. Shreeji Hospitality (Shreeji) owned the hotel project. The hotel was being constructed by general contractor Madan Construction Co. (Madan). D.T. was a subcontractor hired by Madan, and Gatwood supplied the crane that lifted the trusses. The crane was operated by Verne Paddock, who had worked for Gatwood since 1996.

Paddock was the only Gatwood employee on the site on April 5, 1997. He worked with D.T. employees, some of whom were on the ground rigging, or connecting the load to the crane, and one who was standing in the window that had a clear view to the crane operator. That D.T. employee was directing Paddock through hand signals and watching the load as it was being moved across the building and landing. As Paddock was lowering a bundle of trusses onto the roof, Schmid, who was on the second floor unloading and bracing trusses, was struck by a truss that began to fall, knocking him through a hole in the second floor.

As a result of his injuries, Schmid filed a negligence complaint against Shreeji, Madan, and Gatwood. Madan filed a Third Party Complaint against D.T. seeking indemnity for the negligence of D.T. On March 5, 2003, Gatwood filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Trial Rule 12(B)(1), alleging that Paddock was under the direction, supervision and control of D.T., and was therefore a co-employee of Schmid. Gatwood argued that this entitled it to the exclusivity provision of the Indiana Worker's Compensation Act with regard to Schmid's claims.

The materials that Gatwood designated to the court in support of its motion included the Agreement. At the top of the Agreement, the customer's name is listed as Lena Truss, the manufacturer of the trusses used to construct the hotel. However, it was signed by D.T. employee Don

1. Although he is the plaintiff in this case, Gary Schmid is not a party to this appeal.

Wilkes. There are two places for a signature on the Agreement. The first, which is signed at the start of the job, is directly beneath the following language, "The terms and conditions governing this rental as described on the reverse side are understood and agreed to." Appellant's App. p. 101. The second, which is signed at the end of the job, is directly beneath the following language, "The above hours are verified to be correct." Appellant's App. p. 101. Wilkes provided both of these signatures. The terms and conditions state in relevant part:

> 2. *INDEMNIFICATION:* Lessee agrees that the equipment and all persons operating such equipment, including Lessor's employees, are under Lessee's exclusive jurisdiction, supervision and control and agrees to indemnify and save Lessor, its employees and agent harmless from all claims for death or injury to persons, including Lessor's employees, and from all loss, damages or injury to property, including the equipment, arising in any manner out of Lessee's operation. Lessee's duty to indemnify hereunder shall include all costs or expenses arising out of all claims specified herein, including all court and/or arbitration costs, filing fees, attorneys' fees and costs of settlement. Lessee shall not be required to indemnify Lessor for Lesor's sole negligence, but Lessor's liability for damage caused by the sole negligence of Lessor, its agents and employees shall be limited to the amount of Lessor's liability insurance.

> 3. *COMPETENT OPERATION BY LESSEE:* Lessee agrees to provide competent and experienced personnel to direct the operation of the equipment and further agrees that the Standard Crane and Derrick Signals in accordance with American Standard B 30.2–1943 shall be used to direct the equipment at all times when applicable.

> . . .

> 11. *AUTHORIZED SIGNATURE:* In the event this agreement has been executed on the reverse side by an individual on behalf of a corporation or other business entity, the person whose signature is affixed hereto and the company for which the individual has signed this agreement represent to Lessor that the individual signing has full authority to execute this agreement on behalf of said corporation or other business entity.

Appellant's App. p. 102. The trial court held a hearing on the motion to dismiss on April 17, 2003, and entered an order granting the motion to dismiss on April 23, 2003, finding that the cause of action should be before the Worker's Compensation Board because Paddock was a borrowed employee of D.T. D.T. now appeals.

### DISCUSSION AND DECISION

Initially, we note that the standard of appellate review for Trial Rule 12(B)(1) motions to dismiss is a function of what occurred in the trial court. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001). The standard of review depends upon whether the trial court resolved disputed facts, and, if so, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id.* Where, as here, the facts are in dispute and the trial court conducts an evidentiary hearing, then we will reverse only if the trial court's factual findings and judgment, are clearly erroneous. *Id.* Factual findings are clearly erroneous if the evidence does not support them, and a judgment is clearly erroneous if it is unsupported by the factual findings or conclusions of law. *Id.*

### I. Introduction of the Agreement Into Evidence

D.T. first argues that the Agreement should not have been considered by

the trial court. Specifically, D.T. contends that the Agreement should not have been entered into evidence because the signature was not authenticated.

■ The appropriate method for a defendant to contest subject matter jurisdiction is a motion pursuant to Trial Rule 12(B)(1). Like ruling on a motion for summary judgment, the trial court may consider not only the complaint and motion but affidavits and evidence submitted in support of the motion. *GKN*, 744 N.E.2d at 400. The Indiana Rules of Evidence require the authentication of documents before they can be considered as evidence. Evid. R. 901. Moreover, if a party fails to make an objection to the trial court, the objection is waived. *Bankmark of Florida, Inc. v. Star Fin. Card Servs., Inc.*, 679 N.E.2d 973, 980 (Ind.Ct.App.1997).

At the hearing on the motion to dismiss, D.T., did not raise an objection to the authenticity of the Agreement. D.T. did object to the introduction of the agreement as evidence, but the objection was limited to whether the Agreement had been "designated as evidence to his motion." Appellant's App. p. 22. When D.T.'s attorney learned that the Agreement had indeed been designated, he withdrew the objection saying, "That's my mistake then, your Honor." Appellant's App. p. 22. Thus, D.T. has waived the issue of the authenticity of the Agreement for appellate review.

## II. Borrowed Employee

D.T. next contends that Paddock was not a borrowed employee for purposes of the Worker's Compensation Act. Specifically, D.T. argues that because it does not meet any of the seven factors, that they may not be considered the special employer of Paddock.

■ The Indiana Worker's Compensation Act provides the exclusive remedy of an injured worker against his employer or co-employee. Ind.Code § 22–3–2–6. A person may have more than one employer at any given time for purposes of the Worker's Compensation Act when one employer has loaned his employee to another employer. *U.S. Metalsource Corp. v. Simpson*, 649 N.E.2d 682, 685 (Ind.Ct.App. 1995). If a borrowed employee's injury occurred by accident and arose out of and in the course of employment with either the general or special employer, he is entitled to worker's compensation benefits, and Indiana Code section 22–3–2–5 operates to bar a court from hearing any common law action brought by the employee for the same injuries. *Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145 (Ind.Ct.App. 1995). The party opposing jurisdiction has the burden to prove that the trial court does not have jurisdiction. *GKN*, 744 N.E.2d at 404.

> To determine if an employer-employee relationship exists which may subject an employee to the Worker's Compensation Act so as to bar his common law claims against the special employer to whom he was 'loaned', the following factors have been enumerated: (1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries.

*Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991). The *Hale* factors are balanced, with the right of the employer to exercise control over the employee given the most weight, although it is not dispositive. *GKN*, 744 N.E.2d at 402. We will address each factor in turn.

■ In *U.S. Metalsource*, we held that the right to discharge factor was established where the special employer did not

have the power to terminate the borrowed employee's employment with the general employer, but could terminate his employment with the special employer by calling a supervisor of the general employer and instructing him that it no longer wanted the borrowed employee to deliver its steel. *U.S. Metalsource,* 649 N.E.2d at 686. The parties here disagree as to whether D.T. had the authority to direct Paddock off the job site. In Paddock's affidavit, he knew, based on his twelve years of experience, that the D.T. carpenters had the right to discharge him if they were not satisfied with his work. Appellant's App. p. 100. On the contrary, the affidavit of Davis, the owner of D.T., stated, "No one from D.T. Carpentry had the authority to direct the crane operator off the job site or terminate the crane operator's employment." Appellant's App. p. 151. Taken to its logical extreme, Davis's statement would mean that Paddock could not be removed even if he were operating the crane in a patently unsafe manner. The trial court undoubtedly found this difficult to believe. We find that D.T. had the right to indirectly discharge Paddock from his employment with D.T. This is sufficient to establish the first factor.

It is undisputed in this case that Gatwood paid Paddock. Inasmuch as D.T. did not pay Paddock, directly or indirectly, the mode of payment factor weighs in favor of Paddock not being a borrowed employee of D.T.

In *Davis v. Central Rent–A–Crane,* 663 N.E.2d 1177, 1180 (Ind.Ct.App.1996), we found the "supplied tools or equipment" factor to be satisfied where the plaintiff's employers supplied the hooks and chains used by the crane operator. Here, "[t]he straps, hooks, and chains used to enable the crane to lift the trusses off of the ground and onto the roof were supplied by Gatwood Crane." Appellant's App. p. 151.

Gatwood contends that this factor weighs in their favor because "[D.T. Carpentry] supplied the tools used by [Schmid] and the D.T. carpenters to brace the trusses after they were lifted to the second floor." Appellee's Br. p. 15. However, the tools supplied by D.T. were not used by Paddock. Only D.T. employees used the equipment that Gatwood refers to, and thus this factor does not support a finding that Paddock was a borrowed employee.

The president of D.T. stated in his affidavit that he did not believe that an employer-employee relationship existed between D.T. and Paddock. Appellant's App. p. 151. There is no direct evidence as to whether Paddock believed an employer-employee relationship existed between them, but the fact that he only worked for D.T. for one day leads to the inference that he would not have believed such a relationship existed.

That brings us to the factor that is to be given the most weight: control over the means used in the results reached. Here, D.T. employees told Paddock what work needed to be done and how they wanted the job to proceed. Appellant's App. p. 149. A D.T. employee hooked the trusses to the crane, and another D.T. employee used hand signals to direct the necessary and safe movement of the crane. Appellee's App. p. 26, 27. Other D.T. employees landed and unloaded the trusses from the crane onto the second floor and braced the trusses to prevent them from falling. Appellee's App. p. 27. Moreover, Paddock worked the schedule mandated by D.T. that day. Appellant's App. p. 101. In short, D.T. controlled Paddock completely throughout the day that he worked at the construction site. This factor clearly falls in favor of finding that Paddock was a borrowed employee.

In *GKN,* our supreme court stated, "[T]he longer the length of employment,

the more indicative it is of an employer/employee relationship." *GKN*, 744 N.E.2d at 406. The *GKN* court went on to find that a three-month period could not be said to weigh in favor of finding an employment relationship between Magness and GKN. Here, Paddock only worked with D.T. for one day. This is insufficient to establish the "length of employment" factor in favor of finding the Paddock was a borrowed employee.

Finally, D.T. asserts that it did not establish work boundaries, essentially because Shreeji Hospitality owned the worksite. Although Shreeji provided the work site, D.T. set the boundaries within which Paddock worked. Paddock received instructions from only D.T. employees, and picked up the trusses that D.T. employees told him to lift and put them where D.T. employees told him to put them. Although Paddock was able to choose the precise location of the crane, he had to do so within the boundaries of what load D.T. employees had told him to pick up and where and when to move them. This evidence tends to support a finding that Paddock was a borrowed employee.

Balancing the *Hale* factors and giving considerable weight to the element of control, we conclude there was sufficient evidence before the trial court to conclude that Paddock was a borrowed employee. Accordingly, the Worker's Compensation Board has jurisdiction over this cause. Thus, the trial court properly granted the motion to dismiss for lack of subject matter jurisdiction.

The judgment of the trial court is affirmed.

NAJAM, J., and MAY, J., concur.