# FOR PUBLICATION



FILED
Sep 11 2013, 5:45 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**JOHN P. DALY, JR.**
Golitko & Daly PC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**JOHN C. TRIMBLE**
**STEPHANIE L. CASSMAN**
**BRANDON W. EHRIE**
Lewis Wagner, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DONOVAN JOHNSON and ) 
AILEEN JOHNSON, ) 
       ) 
    Appellants-Plaintiffs, ) 
       ) 
    vs. )    No. 49A02-1212-CT-1027 
       ) 
POINDEXTER TRANSPORT, INC. AND ) 
CRANE SERVICE, ) 
       ) 
    Appellee-Defendant. ) 

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1008-CT-36867

September 11, 2013

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

On December 10, 2009, Appellant-Plaintiff Donovan Johnson was injured while working on a construction project in West Lafayette when a wooden form broke apart and fell from a crane that was being operated by an employee of Appellee-Defendant Poindexter Transport Inc. and Crane Service ("Poindexter"). On August 20, 2010, Donovan and his wife Aileen (collectively, "the Johnsons") filed suit against Poindexter, alleging that Donovan was injured as a result of Poindexter's negligence. Poindexter subsequently filed a motion to dismiss pursuant to Indiana Trial Rule 12(B)(1), alleging that the trial court lacked subject matter jurisdiction because the Johnsons' exclusive remedy was to pursue a claim for benefits under the Indiana Worker's Compensation Act (the "Worker's Compensation Act").

On November 23, 2012, the trial court granted Poindexter's motion to dismiss. The Johnsons appealed the trial court's order. Upon review, we conclude that the trial court lacked subject matter jurisdiction to hear the Johnsons' claims because, under the provisions set forth in the Worker's Compensation Act, at the time of the accident, Donovan and the crane operator were co-employees. Accordingly, we affirm.

**FACTS AND PROCEDURAL HISTORY**

Poindexter is in the business of providing crane services, including machine rental and licensed crane operators, to construction contractors. R.L. Turner was the general contractor on a construction project located in West Lafayette known as the Gatewood Project. R.L. Turner subcontracted with Poindexter for the necessary crane operations for the Gatewood Project. As a result of the agreement between R.L. Turner and Poindexter, David Creel, a

2

certified crane operator employed by Poindexter, was assigned to operate a crane for the Gatewood Project.

Creel worked at the Gatewood Project jobsite for a period of several weeks. While working on the Gatewood Project, Creel worked at the direction of R.L. Turner and its employees. R.L. Turner instructed Creel on what materials to move. R.L. Turner also instructed Creel on when and where to move the materials. R.L. Turner provided the rigging and straps used to attach the necessary materials to the crane. At the end of each day, R.L Turner approved the hours worked by Creel before turning Creel's timesheet over to Poindexter.

On December 10, 2009, Creel and employees of R.L. Turner were moving wooden block forms that were to be used in the construction of concrete walls. Employees of R.L. Turner (1) built the wooden block forms; (2) attached the forms to the rigging and straps, which were connected to the crane hook; (3) acted as signal men directing Creel's operation of the crane, instructing him when to lift and lower the crane's hook; and (4) were responsible for bracing and removing the forms from the rigging and straps. At some point, as Creel began to lower a form, again "at the direction of the R.L. Turner signalman," the form came apart. Appellant's App. p. 34. The top board of the form remained attached to the rigging, while the remainder of the form detached from the top board and fell. Donovan, an employee of R.L. Turner, was injured when he was struck by a piece of the falling form.

On August 20, 2010, the Johnsons filed an action against Poindexter. In this action, Donovan claimed to have been injured as a result of Poindexter's "negligent acts."

3

Appellant's App. p. 30. Aileen claimed to have suffered loss of consortium as a result of Donovan's injuries.

On June 12, 2012, Poindexter filed a motion to dismiss for lack of subject matter jurisdiction under Indiana Trial Rule 12(B)(1). In this motion, Poindexter alleged that the trial court lacked subject matter jurisdiction because, at the time of the incident, Donovan and Creel were co-employees and, as a result, the Johnsons' exclusive remedy was to pursue a claim for benefits under the Worker's Compensation Act. Poindexter filed an accompanying brief in support of its motion, to which it attached a copy of the Johnsons' complaint and the affidavit of Creel. The Johnsons filed a response in opposition to Poindexter's motion to dismiss on August 24, 2012. In support of this filing, the Johnsons designated Creel's affidavit and excerpts from Creel's deposition. Shortly thereafter, Poindexter filed a reply to the Johnsons' August 24, 2012 response.

On October 22, 2012, the trial court conducted a hearing at which it heard arguments from the parties both in support of and in opposition to Poindexter's motion to dismiss. The parties did not submit additional evidence to the trial court during this hearing. On November 23, 2012, the trial court, ruling on the paper record submitted by the parties, issued an order granting Poindexter's motion to dismiss. This appeal follows.

## DISCUSSION AND DECISION

The Johnsons contend that the trial court erred in granting Poindexter's motion to dismiss under Trial Rule 12(B)(1).

### I. Standard of Review

4

It is well-settled that when an employer defends against an individual's negligence claim on the basis that the individual's exclusive remedy is to pursue a claim for benefits under the Worker's Compensation Act, the defense is properly advanced through a motion to dismiss for lack of subject matter jurisdiction under Trial Rule 12(B)(1). *GKN Co. v. Magness*, 744 N.E.2d 397, 400 (Ind. 2001) (citing *Foshee v. Shoney's Inc.*, 637 N.E.2d 1277, 1280 (Ind. 1994)). "When a trial court is confronted with a motion to dismiss based on Trial Rule 12(B)(1), the trial court is required to determine whether it has the power to adjudicate the action." *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy and Planning*, 699 N.E.2d 306, 308 (Ind. Ct. App. 1998). "In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court may consider not only the complaint and motion but also any affidavits or evidence submitted in support." *Id*. "In addition, the trial court may weigh the evidence to determine the existence of the requisite jurisdictional facts." *Id*.

> In [*GKN*], our supreme court clarified the standard for appellate review of a trial court's grant or denial of such a motion. [744 N.E.2d at 400.] The standard of review for [Trial Rule] 12(B)(1) motions to dismiss is dependent upon what occurred in the trial court, *i.e.*, whether the trial court resolved disputed facts; and, if the trial court resolved disputed facts, whether it conducted an evidentiary hearing or ruled on a "paper record." *Id*. at 401.
> If the facts before the trial court are not in dispute, then the question of subject matter jurisdiction is purely one of law. *Id*. Under those circumstances, no deference is afforded to the trial court's conclusion because "appellate courts independently, and without the slightest deference to the trial court's determinations, evaluate those issues they deem to be questions of law." *Id*. (quoting *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind. 2000)). Thus, we review de novo a trial court's ruling on a motion to dismiss where the facts before the trial court are undisputed. *See id*.
> If the facts before the trial court are in dispute, then our standard of review focuses on whether the trial court conducted an evidentiary hearing. If

an evidentiary hearing took place, we will give the trial court's factual findings and judgment deference. *See id.* (quoting *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000)). In reviewing the trial court's factual findings and judgment, we will only reverse if they are clearly erroneous. *Id.*

However, where the facts are in dispute but the trial court rules on a paper record without conducting an evidentiary hearing, then no deference is afforded to the trial court's factual findings or judgment because, under those circumstances, a court of review is "in as good a position as the trial court to determine whether the court has subject matter jurisdiction." *Id.* Thus, we review de novo a trial court's ruling on a motion to dismiss where the facts before the court are disputed and the trial court rules on a paper record.

*Argabright v. R.H. Marlin, Inc.*, 804 N.E.2d 1161, 1165 (Ind. Ct. App. 2004), *trans. denied*.

"As a general proposition, the party challenging subject matter jurisdiction carries the burden of establishing that jurisdiction does not exist." *GKN*, 744 N.E.2d at 404.

In the present case, the Johnsons claim that several facts before the trial court were in dispute, while Poindexter claims that the facts before the trial court were not in dispute. However, regardless of whether there were facts in dispute before the trial court, our review on appeal is de novo because the trial court did not conduct an evidentiary hearing,[1] but, rather, ruled on a paper record. In conducting our review de novo, we will affirm the judgment of the trial court on any legal theory the evidence of record supports. *Argabright*, 804 N.E.2d at 1165. The ruling of the trial court is presumptively correct, and we will reverse on the basis of an incorrect factual finding only if the appellant persuades us that the balance of the evidence is tipped against the trial court's determination. *Id.*

## II. Employer-Employee Relationship Under the Worker's Compensation Act

The Worker's Compensation Act "provides the exclusive remedy for recovery of

---

[1] Again, the parties presented argument at the October 22, 2012 hearing but did not present any evidence in addition to the parties' previously submitted designated materials.

6

personal injuries arising out of and in the course of employment." *Id*. at 116 (citing Ind. Code § 22-3-2-6). Although the Worker's Compensation Act bars a court from hearing any common law claim brought against an employer for an on-the-job injury, it does permit an action for injury against a third-party tortfeasor provided the third-party is neither the plaintiff's employer nor a fellow employee. *Id*. (citing Ind. Code § 22-3-2-13). "A person may have more than one employer at any given time for purposes of the Worker's Compensation Act when one employer has loaned his employee to another employer." *Verma v. D.T. Carpentry, LLC*, 805 N.E.2d 430, 433 (Ind. Ct. App. 2004). "Where two employers 'so associate themselves together that both are in direct control of the employee and he is made accountable to both, he will be considered an employee of both employers.…'" *GKN*, 744 N.E.2d at 402 (quoting *U.S. Metalsource Corp. v. Simpson*, 649 N.E.2d 682, 685 (Ind. Ct. App. 1995)).

In the instant matter, the Johnsons contend that they are entitled to recover against Poindexter because Creel was employed by Poindexter, not R.L. Turner, at the time Donovan was injured, and thus, Donovan was not a co-employee of Creel. Poindexter, for its part, contends that R.L. Turner had associated itself in such a manner that an employer-employee relationship existed between R.L. Turner and Creel. As such, Poindexter claims that the Worker's Compensation Act bars the Johnsons' claims against Poindexter.

The determination of whether an employer-employee relationship exists ultimately is a question of fact. *Argabright*, 804 N.E.2d at 1166. "In making this determination, the fact-finder must weigh a number of factors, none of which is dispositive." *Id*. In *Hale v. Kemp*,

7

579 N.E.2d 63, 67 (Ind. 1991), the Indiana Supreme Court identified these factors as: (1) the right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries. Upon review, these factors must be weighed against each other as part of a balancing test as opposed to a mathematical formula where the majority wins. *See GKN*, 744 N.E.2d at 402. When applying this balancing test, the greatest weight should be given to the right of the employer to exercise control over the employee. *Argabright*, 804 N.E.2d at 1166 (citing *GKN*, 744 N.E.2d at 405-06).

### III. Balancing the *Hale* Factors

We next turn our attention to the *Hale* factors to determine whether Poindexter carried its burden of establishing that the Johnsons' claims lay within the jurisdiction of the Worker's Compensation Act. Stated differently, we examine whether Poindexter established that the trial court lacked jurisdiction to adjudicate the Johnsons' claims. *See GKN*, 744 N.E.2d at 404.

### 1. Right to Discharge

Both the Indiana Supreme Court and this court have found that the right to discharge factor can be established where the special employer did not have the power to terminate the borrowed employee's employment with the general employer, but could terminate the borrowed employee's employment with the special employer. *See id.* at 404-05 (finding that the right of discharge factor weighed in favor of a conclusion that the employee was an

8

employee of the special employer because, although the special employer did not have the authority to terminate the employee's employment with the general employer, the special employer did have the authority to terminate the employee's employment with the special employer); *Verma*, 805 N.E.2d at 434 (providing the right of discharge factor weighed in favor of a conclusion that an employer-employee relationship existed because the crane supplier provided sufficient evidence to establish that the special employer had the authority to indirectly discharge the employee from his employment with the special employer); *Argabright*, 804 N.E.2d at 1166 (providing the right of discharge factor weighed in favor of a conclusion that an employer-employee relationship existed because, while the special employer did not have the authority to terminate the employee's employment with the general employer, it could effectively terminate the employee's employment with the special employer); *U.S. Metalsource*, 649 N.E.2d at 685 (providing that the right of discharge factor weighed in favor of a conclusion that an employer-employee relationship existed because, while the special employer did not have the power to terminate the employee's employment with the general employer, the special employer did have the power to terminate the employees employment with the special employer).

In the instant matter, nothing in the record indicates that R.L. Turner had the power to terminate Creel from his employment at Poindexter. However, in his affidavit, Creel averred that R.L. Turner had the right to discharge him from working at the Gatewood Project jobsite at any time. We conclude that R.L. Turner had a right to indirectly discharge Creel from his employment with R.L. Turner. As such, we conclude that this factor weighs in favor of a

conclusion that Creel was a borrowed employee of R.L. Turner.

## 2. Mode of Payment

It is undisputed in this case that Poindexter paid Creel. Each day, Creel turned his timesheet into R.L. Turner who, after verifying the time listed, sent the timesheet to Poindexter. Poindexter would then pay Creel. Inasmuch as R.L. Turner did not pay Creel, directly or indirectly, this factor weighs against a conclusion that Creel was a borrowed employee of R.L. Turner.

## 3. Supplying Tools or Equipment

In *Argabright*, we concluded that the supplying tools or equipment factor was met when most of the equipment used by the employee was supplied by the special employer. 804 N.E.2d at 1167. The undisputed evidence presented in *Argabright* established that while the service crane was owned by the general employer and operated exclusively by the employee, the special employer provided some of the rigging used on the service crane, the materials that needed to be moved by the crane on the jobsite, and some of the mats used to move the service crane around the jobsite. *Id.*

In the instant matter, Poindexter provided the crane. Creel operated the crane. Employees of R.L. Turner constructed the forms that were being attached to the crane and moved on December 10, 2009. R.L. Turner also provided the equipment used for lifting the block forms, including rigging and straps. Like in *Argabright*, we conclude that since R.L. Turner supplied the equipment used to move the forms, including the rigging and straps, this factor weighs in favor of a conclusion that Creel was a borrowed employee of R.L. Turner.

10

**4. Belief of the Parties in the Existence of an Employer-Employee Relationship**

While an employee's belief that no employment relationship exists does not necessarily defeat the existence of an employer-employee relationship, *see U.S. Metalsource*, 649 N.E.2d at 686, the Indiana Supreme Court has declined to find in favor of an employer-employee relationship where neither party believed such a relationship existed. *See GKN*, 744 N.E.2d at 405. In the instant matter, there is no direct evidence as to whether R.L. Turner believed that an employer-employee relationship existed between itself and Creel. Creel did not specifically state whether he believed that an employer-employee relationship existed between he and R.L. Turner, but his deposition testimony suggests that Creel did not believe that such a relationship existed. During his deposition, Creel indicated that he was an employee of Poindexter. Creel stated that through his employment at Poindexter, he had previously worked on projects for R.L. Turner, but that he did not always work on projects for R.L. Turner. Inasmuch as the record does not indicate that either R.L. Turner or Creel believed that they had an employer-employee relationship, this factor weighs against a conclusion that Creel was a borrowed employee of R.L. Turner.

**5. Control over the Means Used in the Results Reached**

As we stated above, while "'not dispositive, control is the most important factor when determining whether an employer-employee relationship exists.'" *Argabright*, 804 N.E.2d at 1167 (quoting *GKN*, 744 N.E.2d at 405-06). We have previously found sufficient control to demonstrate an employment relationship when the employees of a crane lessee directed the crane operator and determined which loads he lifted and how he lifted them, despite the fact

11

the crane operator retained the right to refuse to perform a task if he deemed said task to be unsafe. *Id.* (citing *Davis v. Central Rent-A-Crane*, 663 N.E.2d 1177, 1179 (Ind. Ct. App. 1996), *disapproved of on other grounds by GKN*, 744 N.E.2d at 402 n.1); *Verma*, 805 N.E.2d at 434.

In the instant matter, although Creel maintained the ability to refuse to make a lift if he felt the conditions rendered the lift unsafe, Creel was supervised by and worked at the sole direction of employees of R.L. Turner. Employees of R.L. Turner told Creel what work needed to be done and how they wanted the job to proceed. Employees of R.L. Turner constructed the forms and provided the rigging and straps for lifting the forms. Employees of R.L. Turner attached the rigging to the crane hook and attached the forms to the rigging and straps. An employee of R.L. Turner used hand signals to direct the necessary movement of the crane. Other employees of R.L. Turner braced, landed, and unloaded the forms from the crane. In short, R.L. Turner controlled Creel almost completely throughout each day that he worked at the construction site. This factor clearly falls in favor of finding that Creel was a borrowed employee of R.L. Turner.

### 6. Length of the Employment

The "longer the length of employment, the more indicative it is of an employer/employee relationship." *GKN*, 744 N.E.2d at 406. In *GKN*, the Indiana Supreme Court found that a three-month term of employment "was so abbreviated that it shed[] little light one way or the other" as to whether the employee was an employee of the special employer. 744 N.E.2d at 406. As such, the Indiana Supreme Court concluded that the length

12

of employment presented in *GKN* could not be said to weigh in favor of finding an employment relationship between the employee and the special employer. *Id.*

In the instant matter, Creel worked at the Gatewood Project jobsite under the direction of R.L. Turner for "several weeks." Appellant's App. p. 34. Similar to the Indiana Supreme Court's finding in *GKN*, we find that this term of employment was so abbreviated that it shed little light one way or the other as to whether an employer-employee relationship existed between R.L. Turner and Creel. Accordingly, we conclude that this factor cannot be said to weigh in favor of a conclusion that Creel was a borrowed employee of R.L. Turner.

### 7. Establishment of Work Boundaries

The evidence designated before the trial court clearly establishes that R.L. Turner set the boundaries within which Creel worked. The Gatewood Project jobsite was supervised by employees of R.L. Turner. The hours Creel worked at the jobsite were determined by employees of R.L. Turner. Creel operated the crane at the direction of employees of R.L. Turner. He received instructions from R.L. Turner regarding which items to lift with the crane and where to place the items. This factor weighs in favor of a conclusion that Creel was a borrowed employee of R.L. Turner. *See generally Verma*, 805 N.E.2d at 435 (providing that the establishment of the work boundaries factor weighed in favor of a conclusion that the crane operator was a borrowed employee when the special employer set the boundaries within which the crane operator worked and instructed the crane operator with regard to completing the required lifts).

### 8. Balancing the Seven Factors

13

Balancing the *Hale* factors and giving considerable weight to the element of control, we conclude that there was sufficient evidence before the trial court to conclude that Creel was a borrowed employee of R.L. Turner. Accordingly, we conclude that the Johnsons are barred from bringing a claim for damages against Poindexter because their exclusive remedy is to pursue a claim for benefits under the Worker's Compensation Act. *See Argabright*, 804 N.E.2d at 1168-69 (citing Ind. Code § 22-3-2-13). Consequently, we further conclude that the trial court properly granted Poindexter's motion to dismiss pursuant to Trial Rule 12(B)(1), as it lacked subject matter jurisdiction to hear the case.

The judgment of the trial court is affirmed.

BAILEY, J., and MAY, J., concur.