H. MAIE POPE, Plaintiff-Appellant, v. ALBERTO-CULVER COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—97—0202

Opinion filed April 27, 1998.

Welsh & Katz, Ltd., of Chicago (R. Mark Halligan and John L. Ambrogi, of counsel), for appellant.

Tressler, Soderstrom, Maloney & Priess, of Chicago (Howard K. Priess III and James K. Borcia, of counsel), for appellee.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

On May 27, 1995, plaintiff H. Maie Pope filed a complaint against defendant Alberto-Culver Company for trade secret misappropriation in violation of the Illinois Trade Secrets Act (765 ILCS 1065/1 et seq. (West 1994)), breach of contract and unjust enrichment. Plaintiff alleges defendant misappropriated a proposal she submitted to the company which involved the dispensing of lye-based hair relaxer in a squeezable tube, using the tube to apply the product. She contends defendant misappropriated her proposal by introducing a similar product line after the company rejected her proposal. The trial court bifurcated the liability and damage issues for separate trials, and after discovery on the liability issues, defendant moved for summary judgment. The trial court granted defendant's motion for summary judgment on December 11, 1996. It is from this order that plaintiff appeals.

## I. FACTS

Plaintiff approached defendant in May of 1990 with a proposal in which a plastic tube is used to contain and apply lye-based hair relaxer. Defendant has developed and marketed product lines that include both lye-based and non-lye-based hair relaxers since the 1980s. Within the industry at large, non-lye-based hair relaxers are sold in tubes almost identical to those in plaintiff's proposal, while lye-based hair relaxers are sold primarily in plastic jars or tubs, though at least one company has sold a lye-based hair relaxer in a plastic, squeezable bottle.

After conducting research in the public library, plaintiff con-

structed crude models and made drawings of her proposal. Her proposal included prototypes of the dispenser and instructions for its use. She and defendant executed a confidential and nondisclosure agreement in which defendant agreed not to disclose or misappropriate any trade secrets or confidential information contained in the proposal.

Defendant rejected plaintiff's proposal in February 1991. In April of 1993, defendant introduced a line of hair care products under the name "Motions," which included a lye-based hair relaxer in a tube. In her complaint, plaintiff contends the idea for the "Motions" tube was taken directly from her proposal. Defendant denies that plaintiff's proposal led to the creation of the "Motions" tube and asserts the idea was independently originated by an employee who had experience with lye-based relaxers in tubes as early as the 1970s.

## II. ANALYSIS

### 1. Standard of Review

■ The appellate review of a grant of summary judgment is *de novo. USG Corp. v. Sterling Plumbing Group, Inc.*, 247 Ill. App. 3d 316, 318, 617 N.E.2d 69 (1993). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). The function of the appellate court in reviewing the grant of summary judgment is not to decide disputed issues of fact but rather to determine whether a factual dispute exists. *Kerr v. Illinois Central R.R. Co.*, 283 Ill. App. 3d 574, 583, 670 N.E.2d 759 (1996). The court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Quality Lighting, Inc. v. Benjamin*, 227 Ill. App. 3d 880, 884, 592 N.E.2d 377 (1992).

### 2. The Illinois Trade Secrets Act

Plaintiff first asserts that defendant misappropriated her trade secret under the Illinois Trade Secrets Act (Act) (765 ILCS 1065/1 *et seq.* (West 1994)). Before addressing the issue of misappropriation under the Act, however, we must determine whether plaintiff's proposal is entitled to trade secret protection as a matter of law.

■ Under the Act, a trade secret is defined as follows:

"[I]nformation, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or

potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2 (West 1994).

Under the Act, whether the information sought to be protected qualifies as a trade secret focuses fundamentally on the secrecy of such information. *Thermodyne Food Service Products, Inc. v. McDonald's Corp.*, 940 F. Supp. 1300 (N.D. Ill. 1996). Under the first statutory requirement, the information at issue must be substantially secret to impart economic value to both its owner and its competitors because of its relative secrecy. *Mangren Research & Development Corp. v. National Chemical Co.*, 87 F.3d 937, 942 (7th Cir. 1996), quoting *George S. May International Co. v. International Profit Ass'n*, 256 Ill. App. 3d 779, 628 N.E.2d 647 (1993). This requirement precludes trade secret protection for information generally known or understood within an industry even if not to the public at large. *Mangren*, 87 F.3d at 941; see also M. Jaeger, Trade Secrets Law § 3.04, at 3—34 (1988).

It is well established that a product or service that is within the realm of general skills and knowledge in the industry cannot be a trade secret. *Web Communications Group, Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 319 (N.D. Ill. 1995), citing *Service Centers of Chicago, Inc. v. Minogue*, 180 Ill. App. 3d 447, 535 N.E.2d 1132 (1989).

The *Web* case involved a multipage, stepped advertising insert that plaintiff Web designed to be incorporated into a bound magazine. Though such inserts had been used in the printing industry before, Web's was the first to be utilized in a bound magazine. Though Web discussed using the advertisements with defendant Gateway 2000, the final arrangements for the work were never made. Instead, Gateway hired another company to create similar advertising inserts which appeared in bound magazines. Web filed an action against Gateway for, among other things, misappropriation of a trade secret under the Illinois Trade Secrets Act.

The court granted Gateway's motion for summary judgment on the basis that the stepped insert at issue was not a protectable trade secret under Illinois law. The court found that Web failed to demonstrate that the leap from the previously used stepped inserts to the stepped insert he developed could be characterized as "not generally known or easily duplicated by the industry." *Web*, 889 F. Supp. at 319. The court noted that stepped inserts were well known and used

in the printing industry and that developing a stepped insert that could be run in magazines required little time, money or effort. See also *Hamer Holding Group, Inc. v. Elmore*, 202 Ill. App. 3d 994, 560 N.E.2d 907 (1990) (the key to secrecy under the Act is the ease with which information can be developed through proper means; if the information can be readily duplicated without involving considerable time, effort or expense, then it is not secret); *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063 (7th Cir. 1992) (no protectable trade secret found where plaintiff failed to demonstrate alleged trade secrets were not within the general skills and knowledge of the industry or readily ascertainable without involving considerable time, effort or expense).

In *Service Centers v. Minogue*, the court provided further guidance as to what information qualifies as a protectable trade secret, stating:

> "Simply being the first or only one to use certain information does not in and of itself transform otherwise general knowledge into a trade secret. If it did, the first person to use the information, no matter how ordinary or well known, would be able to appropriate it to his own use under the guise of a trade secret. We do not believe such a result was intended by the Act." *Service Centers*, 180 Ill. App. 3d at 455.

We believe the above language is particularly applicable in the present case. There is no dispute that a tube dispenser for non-lye-based hair relaxer, with a nozzle, was already in existence at the time plaintiff submitted her proposal to defendant. There is no dispute that a squeezable bottle-shaped dispenser, with a nozzle, was already in existence for lye-based relaxer. In fact, the only "new" aspect of plaintiff's proposal was the use of the base of the tube to spread the relaxer, and it is clear this method could have been easily and cheaply discovered utilizing existing technology. The fact that defendant marketed the "Motions" tube as "A New Technology" does not make it so for purposes of a legal analysis.

The *Service Centers* court noted that the focus of both the common law and the Act is on the secrecy of information sought to be protected. *Service Centers*, 180 Ill. App. 3d at 453. Prior to enactment of the Act, the supreme court outlined several factors to be addressed in determining whether a trade secret exists. *ILG Industries, Inc. v. Scott*, 49 Ill. 2d 88, 273 N.E.2d 393 (1971). These factors parallel the standards under the Act and can be helpful in our analysis of whether plaintiff's proposal was a protectable trade secret. *Jackson v. Hammer*, 274 Ill. App. 3d 59, 653 N.E.2d 809 (1995).

■ In *ILG Industries*, the supreme court identified the following

six factors as significant in determining the existence of a trade secret:

"(1) [T]he extent to which the information is known outside of [plaintiff's] business; (2) the extent to which it is known by employees and others involved in [plaintiff's] business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; [and] (6) the ease or difficulty with which the information could be properly acquired or duplicated by others." *ILG Industries, Inc.*, 49 Ill. 2d at 93.

■ The information on which plaintiff's proposal was based clearly existed before she sent the idea for the product to defendant. This information was well known in the hair care business and could be easily duplicated. The fact that it had not been utilized is simply not determinative.

Plaintiff asserts that she conducted experiments and did library research which resulted in the product at issue. In a declaration to the court, she makes several general assertions as to the time, effort and expense of developing her proposal. However, these assertions must be viewed in the context of the alleged trade secret, which is really a combination of two existing products—lye-based hair relaxer and a stock caulk tube.

Certainly the placement of lye relaxer in an already existing tube was easily within the realm of general skills and knowledge in the industry. See *Web*, 889 F. Supp. at 320. Likewise, turning the existing tube to use its base to smooth relaxer on the hair was also within the realm of the industry's skills and knowledge. A design or process that can easily be ascertained from an examination of the product itself cannot be a trade secret. *Televation Telecommunication Systems, Inc. v. Saindon*, 169 Ill. App. 3d 8, 522 N.E.2d 1359 (1988). Such is the case here.

Plaintiff also contends that her identification of a "niche market" for this product and market timing information constitute trade secrets. However, again we believe these aspects of plaintiff's proposal were generally ascertainable to those within the industry, including defendant. Rohn Hamel, the Alberto-Culver employee charged with developing the "Motions" product line, has been in the hair care industry since the mid-1970s and was involved in the creation of several African-American hair care lines. Defendant company clearly had the knowledge, personnel and resources to identify the "niche market" referred to by plaintiff. The availability of a wide variety of relaxer products targeted to African-American consumers

indicates that this market had already been identified and was considered by many companies to be quite worthwhile in terms of product development.

Finally, while we recognize that plaintiff did take steps to protect the confidentiality of her idea, this alone does not overcome the fact that the general knowledge needed to develop this particular relaxer dispenser and accompanying delivery instructions was well within the province of the industry.

Even if plaintiff were the first to introduce the idea of a lye-based hair relaxer in a tube to this particular defendant, that in and of itself does not transform otherwise general knowledge into a trade secret. See *Minogue*, 180 Ill. App. 3d at 455. We recognize that the key to secrecy under the Act is the ease with which information can be developed. See *Hamer*, 202 Ill. App. 3d at 1011.

Based on the totality of the circumstances, we find that the product at issue in this case can be readily duplicated without considerable time, effort or expense. We further find plaintiff has failed to demonstrate the alleged trade secrets were not within the general skills and knowledge of the industry or were not readily ascertainable without involving considerable time, effort or expense. See *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063 (7th Cir. 1992).

Because we have determined that plaintiff's proposal was not a trade secret as contemplated in the Act, we need not address whether the proposal was misappropriated under the Act. Accordingly the trial court's grant of summary judgment on this count is affirmed.

### 3. Breach of contract

■ Plaintiff next claims defendant violated the confidential and nondisclosure Agreement, in which defendant agreed not to disclose any trade secrets contained therein and agreed not to misappropriate the proposal. We agree with the trial court that because plaintiff's proposal does not constitute a trade secret under Illinois law, this count must also fail.

The agreement reads, in pertinent part:

> "[T]he obligations set forth in Section 1 shall not extend to any portion of such proprietary information: a. which is generally available to the public or becomes so available through no fault of [Alberto-Culver] ***."

Based on our determination that plaintiff's proposal was generally available to the public, we conclude there can be no contractual liability on the part of defendant. Therefore, we affirm the trial court's grant of summary judgment on this count.

4. Unjust enrichment claim

   ██ As noted by the trial court, this claim must also fail, as unjust enrichment is preempted by the Illinois Trade Secrets Act. The Act provides:

> "(a) Except as provided in subsection (b), this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret.
>
> (b) This Act does not affect:
>
> (1) contractual remedies, whether or not based upon misappropriation of a trade secret ***." 765 ILCS 1065/8 (West 1994).

Unjust enrichment is essentially a claim for restitution. *Web*, 889 F. Supp. at 320. Thus, under the Act, plaintiff's claim must fail.

## III. CONCLUSION

As noted by the trial court, if we were to find plaintiff's proposal a trade secret, then placing any well-known, commercially available product into a well-known, commercially available container would be a secret entitled to legal protection. The fact that the proposal contained instructions regarding the use of this well-known, commercially available container for application of the product does not change this analysis. Furthermore, defendant had already targeted African-American consumers for the sale of relaxer products.

We find that plaintiff's product could be easily duplicated and her proposal was based on information generally available within the hair care industry and to the general public; therefore, her proposal does not constitute a protectable trade secret under Illinois law.

Based on the foregoing analysis, we affirm the summary judgment of the trial court.

Affirmed.

BUCKLEY, P.J., and O'BRIEN, J., concur.