In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3084

SUSAN SPITZ,

*Plaintiff-Appellant*,

*v.*

PROVEN WINNERS NORTH AMERICA,
LLC & EUROAMERICAN
PROPAGATORS, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-03997 — **William T. Hart**, *Judge.*

ARGUED MAY 20, 2014 — DECIDED JULY 21, 2014

Before KANNE, TINDER, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Susan Spitz, a freelance copywriter, developed a plan to market "pet safe plants" to the burgeoning pet supplies market. She pitched this idea to Amerinova, a company that develops and licenses plant varieties. Although Amerinova expressed interest, the project eventually stalled.

When Spitz discovered that Proven Winners, a company partially owned by the owners of Amerinova, had described some of its plants as "pet friendly" on its website and plant tags, she sued. Her suit seeks damages for breach of an alleged agreement with Amerinova. But Spitz did not sue Amerinova for damages; instead, she filed suit against Proven Winners and Euro. She raises a host of reasons why any contract with Amerinova also binds Proven Winners and Euro but none of them holds water. We therefore affirm the district court's entry of summary judgment in favor of Proven Winners and Euro.

## I. BACKGROUND

Bringing an ornamental plant to the consumer market involves a number of steps. First, a breeder develops a plant. The breeder then sells or licenses that plant (sometimes with the help of a breeder's agent) to a propagator. The propagator grows large numbers of starter plants, often by cultivating cuttings from a mother plant provided by the breeder. Once the starter plants reach a certain age, they are sold to either wholesale or retail growers, who then sell the plants to consumers.

EuroAmerican Propagators ("Euro"), as its name suggests, is a plant propagator. Proven Winners North America ("Proven Winners") is a brand manager and marketing entity responsible for two plant brands: Proven Winners and Proven Selection plants. Proven Winners is equally owned by Euro and two other propagator corporations: Four Star Greenhouse and Pleasant View Gardens. Euro also uses a breeder's agent, Amerinova Properties ("Amerinova"). Amerinova locates new breeders and identifies new plants that can be commercialized.

Euro and Amerinova are both owned in equal parts by John Rader and Gerald Church. They are registered as separate California LLCs, and there is no formal connection between the two companies. The companies have separate bank accounts, separate budgets, and file their taxes separately. But there are many informal ties between them, in addition to their common ownership. Amerinova was initially a property holding company for Euro but transitioned into a licensing agent around 2004. Church and Rader prevented Amerinova from licensing plants to propagators that would become stiff competition for Euro. For the first few years of Amerinova's existence, it did not turn a profit and depended on investment from Euro for its operational expenses. And Josh Schneider, Amerinova's director of product development, worked about half-time at Amerinova and half-time at Euro from 2004, when Amerinova was created, until his departure in March 2006. Moreover, checks for Schneider's travel reimbursements and salary came from Euro, although his salary and travel were budgeted for by Amerinova.

The plaintiff in this case, Susan Spitz, is a retired freelance copywriter. She did some freelance work in 2001 for Euro. In 2002 or 2003, she began working with Proven Winners to develop a consumer publication called "Gardener's Idea Book." The book included photos and suggestions for how to use Proven Winners plants in home gardening. Spitz also worked on a second edition of the Idea Book published in 2005, which included a section about "Pet-friendly plants." That section focused primarily on plants that could withstand pet traffic, though it also mentioned that the Humane Society

website maintained a list of plants that could be harmful to pets.

In July 2005, Spitz met with Marshall Dirks, a Proven Winners employee, and Ron Walder, a freelance graphic designer, to discuss additional marketing projects for Proven Winners. At the end of the meeting, Spitz approached Dirks and proposed that Proven Winners develop a set of "pet safe" plants sold under the Proven Winners label. Dirks told Spitz that Proven Winners did not develop or create lines of plants but that she should discuss the idea with someone at Euro.

Dirks passed the idea along to Schneider, who met with Spitz to discuss the idea. Schneider liked the idea, and suggested that Spitz present the idea to Church and Rader, the co-owners of both Euro and Amerinova. In November 2005, Schneider emailed Spitz a summary of "how a partnership with Amerinova could be beneficial to you on your Pet Safe Plants Line." In that summary, Schneider explained that Amerinova represented many plant breeders, which meant it had access to a variety of plants that could be marketed as pet safe. Schneider also proposed a $.02 per plant royalty for all plants sold "under the marketing plan for Pet Safe Plants." Spitz did not immediately accept the offer.

On February 23, 2006, Spitz met with Church, Rader, and Schneider in Bonsall, California. She drafted confidentiality and nondisclosure agreements, which she required each attendee to sign before she began her presentation. Spitz then described her marketing plan. The parties dispute whether she accepted Schneider's $.02 royalty offer at the meeting. They next corresponded in April 2006, when Rader sent Spitz a letter

informing her that Schneider had left Amerinova. He added a handwritten note to the bottom of the page: "I love your pet safe plants idea and want to work with you to make it happen." Spitz replied via email, noting that she still intended to work with "Euro/Amerinova on PetSafePlants." The parties had no further discussions about Spitz's idea, and neither Euro nor Amerinova developed a line of pet safe plants.

At some point in 2005, Proven Winners began tagging certain plants on its website as "pet friendly." This attribute later began appearing on plant tags as well. In 2008, it became possible to search for Proven Winners plants bearing the "pet friendly" tag. Taking offense to this labeling, Spitz filed suit against Euro and Proven Winners on October 5, 2010. She alleged violations of the Lanham Act, breach of confidentiality, breach of contract, misappropriation of a trade secret, unjust enrichment, and quantum meruit.[1] All parties eventually moved for summary judgment.

The district court granted summary judgment to Euro and Proven Winners. With regard to Spitz's breach of contract claim, the court reasoned that Spitz had made no arguments about corporate veil-piercing or alter egos, and that Euro was not liable for Amerinova's conduct. Further, Spitz's conduct after April 2006 demonstrated that she did not consider herself bound by any contract with Euro or Proven Winners. And as for Proven Winners, the court found Spitz did not present any evidence that it had used Spitz's marketing concept. At most,

---

[1]   Spitz appeals only the breach of contract, unjust enrichment, and quantum meruit claims, so our review of the proceedings below will focus on those arguments.

the court reasoned, Spitz showed that she had a contract with Amerinova; she did not show that any such contract could be attributed to Euro or Proven Winners.

The district court also granted summary judgment on Spitz's quasi-contract claims. It found the only service relating to pet friendly or pet safe plants Spitz provided to either defendant was her work on the 2005 Gardener's Idea Book for Proven Winners. Because she was adequately compensated for that work, and she did not identify other services she provided to Euro or Proven Winners for which she was not paid, she was not entitled to any equitable remedy. Spitz now appeals.

## II. ANALYSIS

Spitz makes a number of arguments explaining why, although any oral contract she had was with Amerinova, she should nevertheless recover from Euro and Proven Winners. We address each of them in turn below, after dismissing her arguments that California, rather than Illinois, law should apply to her suit. We also dismiss her arguments in quasi-contract and her contention that the district court abused its discretion by denying her motion to compel.

### A. Choice of Law

Before we begin a detailed analysis of the three claims Spitz presents on appeal, we address her argument that California law, rather than Illinois law, should govern her claims. Because the district court was sitting in diversity, it was obligated to apply the substantive law of the forum state (here, Illinois) including its choice-of-law rules. *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009). Spitz argues that a properly-

completed choice-of-law analysis would require the court to apply California, rather than Illinois, law.

But Spitz has not made the threshold showing Illinois courts require before performing a choice-of-law analysis. The Illinois courts hold that "a choice-of-law determination is required only when the moving party has established an actual conflict between state laws." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E. 3d 902, 905 (Ill. 2014); *see also Morisch v. United States*, 653 F.3d 522, 530 (7th Cir. 2011) ("since neither party pointed to a conflict between Missouri and Illinois law, the district court did not need to make a choice of law decision"). At no point, either before the district court or in her brief on appeal, has Spitz identified the purported conflict between Illinois and California law.[2] No choice-of-law determination was required, and the district court was correct to apply Illinois law.

*B. Breach of Contract*

Spitz next argues that the district court erred in granting summary judgment to Euro and Proven Winners on her breach of contract claims because disputed issues of material fact remained. We review the district court's decision on summary judgment *de novo*, drawing all reasonable inferences in favor of

---

[2]　It appears that the relevant conflict is the way the two states treat quantum meruit and unjust enrichment actions based on trade secrets. In Illinois, such claims are pre-empted by the Illinois Trade Secrets Act. *See* section II.C, *infra*. California, on the other hand, appears to recognize such claims. *See Desny v. Wilder*, 299 P.2d 257, 270 (Cal. 1956). Regardless, the parties have not identified the conflict.

the nonmoving party—Spitz, in this case. *Ellis v. DHL Express Inc.*, 633 F.3d 522, 525 (7th Cir. 2011).

To prevail on a breach of contract claim, a plaintiff must establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages resulting from the breach. *Lindy Lu LLC v. Ill. Cent. R.R. Co.*, 984 N.E.2d 1171, 1175 (Ill. App. 2013). Thus, to survive summary judgment, Spitz must have pointed to sufficient evidence supporting each of these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (nonmoving party must make a sufficient showing on all essential elements of the case on which she has the burden of proof).

It is undisputed that Josh Schneider made Spitz an offer, via email, of a two-cent royalty payment for every plant sold using Spitz's Pet Safe Plants marketing concept. And Spitz says she accepted that offer during the Bonsall meeting. Spitz has thus demonstrated that a contract existed for the purposes of summary judgment. That contract, however, was with Amerinova, not Proven Winners or Euro. Accordingly, she must demonstrate either (1) that any actions taken by Amerinova also bound Proven Winners and/or Euro (her "entity theory") or (2) that Josh Schneider was acting on behalf of either Proven Winners or Euro, in addition to Amerinova (her "agency theory").

*1. Entity Theory*

Spitz's entity theory comes in two flavors: either Proven Winners was a member of a joint venture ("the PWJV") along with its three members, such that Euro's activities could bind

Proven Winners; or Euro and/or Amerinova were the agents of Proven Winners and could thus bind it.

Spitz first alleges that Proven Winners, Euro, Four Star, and Pleasant View Gardens were part of a joint venture—that is, the three members of Proven Winners, LLC turned around and formed a joint venture with the LLC they created to "secure, develop and bring new plant programs … into [Proven Winners]." If Euro and Proven Winners were part of the same joint venture, the argument goes, an action by Euro (such as contracting with Spitz) could then also bind Proven Winners.

This is theoretically possible, as an LLC is a legal entity separate from its members. *Peabody-Waterside Dev., LLC. v. Islands of Waterside, LLC*, 995 N.E.2d 1021, 1024 (Ill. App. 2013). Spitz says her evidence that the Proven Winners members (i.e., Euro, Four Star, and Pleasant View Gardens) work together with Proven Winners pursuant to an "established procedure" to develop plant programs required the district court to infer that the Proven Winners members were part of a joint venture with Proven Winners itself. But at the summary judgment phase, we make only reasonable inferences, not every conceivable one. *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 751 (7th Cir. 2012). Proven Winners' operating agreement provides that its members will, *inter alia*, "collectively identify, trial, market, promote, and/or provide vigorous, disease-free floricultural crops." This is substantially identical to the alleged purpose of the PWJV. The fact that Proven Winners conducted business described in its operating agreement is "too thin a reed" on which to base the inference that the PWJV existed. *McCann v. Iroquois Hosp. Corp.*, 622 F.3d 745, 754 (7th Cir. 2010).

Having discarded Spitz's joint venture argument, we address her argument that Euro/Amerinova was an agent of Proven Winners. She argued before the district court that Amerinova and Euro were one and the same, and that Euro/Amerinova was an agent of Proven Winners and could thus bind it to a contract with Spitz. Assuming as true for the moment that Euro and Amerinova are a single entity, Spitz points to no facts in her briefing for this court that would lead us to believe Euro/Amerinova acted as an agent of Proven Winners. She merely incorporates by reference arguments made before the district court. This is insufficient to preserve an argument for appellate review; "[a] brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record." *DeSilva v. DiLeonardi*, 181 F.3d 865, 867 (7th Cir. 1999). We decline to address this argument further.

Related to this argument is Spitz's jumbled "alter ego" argument. Before the district court, Spitz tried to incorporate by reference "the law on Alter Ego cited by Defendants," apparently in an attempt to save space in her filing. But the "law on Alter Ego" the defendants cited described the requirements for piercing the corporate veil. Spitz has made no veil-piercing arguments on appeal. The cases she cites relate to whether Schneider had the authority to bind Euro or Proven Winners, so we will treat her "alter ego" argument as one in support of her agency theory.

*2. Agency Theory*

Spitz also argues that Schneider bound Proven Winners and Euro by orally agreeing to the royalty contract because he

was acting within his actual or apparent authority for either or both companies. The district court dismissed this point easily, noting that "there is no evidence to support that, during the pertinent time period, Schneider had authority to act on behalf of Euro" and declining to address his relationship with Proven Winners. We don't think it is quite as simple as that.

Agency is a notoriously fact-bound question, but summary judgment on the existence of an agency relationship is still appropriate when the plaintiff fails "to meet her burden in presenting sufficient facts to show that a genuine issue of material fact exists with respect to the agency issue." *Doe v. Cunningham*, 30 F.3d 879, 885 (7th Cir. 1994) (citing *Johnson v. Methodist Med. Ctr. of Ill.*, 10 F.3d 1300, 1306 (7th Cir. 1993)).

First, Spitz argues that Schneider had actual authority to bind Proven Winners and/or Euro to royalty contracts. To support this claim, she points to evidence that Schneider regularly acted on behalf of both Proven Winners and Euro, even though he was employed by Amerinova. Schneider worked for Euro beginning in October 2000. In 2004, he became "director of product development" for the newly-formed Amerinova. Although this was his primary job, he continued to manage Euro's product development. Schneider also worked for Proven Winners, representing them at various industry events.

But more than this is required to prove that Schneider had actual authority to bind either Euro or Proven Winners contractually. To do so, Spitz had to present evidence that "(1) a principal/agent, master/servant, or employer/employee relationship existed; (2) the principal controlled or had the

right to control the conduct of the alleged employee or agent; and (3) the alleged conduct of the agent or employee fell within the scope of the agency or employment." *Wilson v. Edward Hosp.*, 981 N.E.2d 971, 978 (Ill. 2012). Spitz presented no evidence that committing Proven Winners to paying two-cent royalty contracts fell within the range of Schneider's duties. And Schneider himself stated in his deposition that while he could negotiate deals for Proven Winners and Euro, only Rader and Church signed and vetted contracts. We see no genuine issue of material fact as to whether Schneider had the actual authority to contract on behalf of Proven Winners or Euro.

Spitz next claims that even if Schneider lacked actual authority to bind Proven Winners or Euro, he had apparent authority to do so. She raised this argument below but the district court did not address it, instead only mentioning that there was no evidence Schneider or Euro actually had authority to act to bind Proven Winners. The lack of actual authority is not dispositive as to apparent authority. Apparent authority arises when (1) the principal or agent acts in a manner that would lead a reasonable person to believe the actor was an agent of the principal, (2) the principal knowingly acquiesces to the acts of the agent, and (3) the plaintiff reasonably relies on the actions of the purported agent. *Wilson*, 981 N.E.2d at 978.

Proven Winners held Schneider out as an employee, giving him a company email address and business cards. And Spitz presented evidence of numerous negotiations Schneider conducted for Proven Winners. These actions could lead a reasonable person to believe that Schneider was Proven Winners's agent and had the authority to enter contracts on its behalf.

With regard to Euro, Spitz presented evidence that the lines between Euro and Amerinova were ambiguously drawn. Both companies had the same two principals, and business meetings tended to cover both Euro and Amerinova-related topics. Amerinova and Euro shared a phone number, and their employees used the terms Amerinova and Euro interchangeably. We have previously found this kind of casual overlap between companies to permit a reasonable person to assume an employee of one has the authority to contract on behalf of the other. *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 371 (7th Cir. 1998) (reversing district court's grant of summary judgment on agency question where purported agent worked for sister company of company sought to be bound, and the two companies were owned by the same two men, they operated out of the same office, and were described during negotiations as being essentially the same).

But additional undisputed facts foreclose a finding that Spitz's belief was reasonable. Although the existence of an agency relationship is typically a question of fact, *Podolsky*, 143 F.3d at 370, questions of fact can become questions of law where undisputed facts lead to only one reasonable inference. *Lockwood v. Bowman Constr. Co.*, 101 F.3d 1231, 1235 (7th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Here, Spitz was explicitly told on multiple occasions that she was negotiating with Amerinova, not Euro or Proven Winners. Marshall Dirks told her that Proven Winners was not interested in the idea, and that she would have to take it to Euro. Spitz does not contest this fact. And the offer Schneider made to Spitz came from his Amerinova email address and referenced only Amerinova working with her to implement the

pet safe plants idea. Further, Spitz had worked with Proven Winners and Euro long enough to understand they were legally distinct entities and admitted as much in her deposition. In light of these undisputed facts, it was unreasonable for Spitz to believe that Schneider was acting with authority to bind Proven Winners and/or Euro, regardless of any other activities he might have undertaken on their behalf.

### C. Quasi-Contract

Spitz further argues that Proven Winners and/or Euro are liable to her under a quantum meruit or unjust enrichment theory because they misappropriated her "pet safe plants" idea. But these claims, when based on misappropriation of a trade secret, have been replaced under Illinois law by the Illinois Trade Secrets Act (the "ITSA"). That statute "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. Because unjust enrichment and quantum meruit are essentially claims for restitution, Spitz's claim fails. *Pope v. Alberto-Culver Co.*, 694 N.E.2d 615, 619 (Ill. App. 1998).

Spitz contends that since the district court found her idea was not a trade secret, her claim is not preempted by the ITSA. But Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged "trade secret" does not fall within the Act's definition. *See id.* (finding claim for unjust enrichment as a result of misappropriation of proposal preempted by the ITSA, even though the proposal itself was not a trade secret within the meaning of the Act).

*D. Denial of Motion to Compel*

Spitz finally argues that the district court abused its discretion when it denied her motion to compel Proven Winners and Euro's production of evidence relating to Schneider's authority and prior two-cent plant contracts with third parties. While we review the district court's actions for abuse of discretion, we will only grant relief if Spitz can demonstrate that the denial of additional discovery "resulted in actual and substantial prejudice." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 644 (7th Cir. 2011).

Spitz cannot demonstrate such prejudice. The additional discovery she sought focused on Schneider's authority and Proven Winners and Euro's dealings with third parties concerning two-cent contracts. But, as we noted above, to survive summary judgment on Schneider's actual or apparent authority, Spitz would have to present evidence that her belief that Schneider was negotiating on behalf of Euro and Proven Winners was reasonable. Because of the undisputed facts concerning the negotiations and Spitz's prior knowledge, it was not. No additional information about Proven Winners and/or Euro's dealings with third parties can alter that conclusion.

Spitz further contends that this evidence would be relevant to establishing the existence of the PWJV. It is not. As previously stated, it belies reason to believe that the members of Proven Winners, having already formed Proven Winners to develop and market plants under the Proven Winners line, would have formed a joint venture with Proven Winners to accomplish the exact same goal. It was not an abuse of discre-

tion for the district court to deny Spitz the opportunity to wriggle down that rabbit hole, particularly given the protracted scope of discovery. The parties had already taken a combined total of more than twenty depositions and produced thousands of documents. We see no abuse of discretion here.

### III. CONCLUSION

Despite extensive discovery and argument, Spitz has failed to persuade us that any legal theory exists that would allow us to hold Proven Winners and Euro accountable for a contract allegedly reached with Amerinova. For that reason, we AFFIRM the district court's entry of summary judgment in favor of the defendants.