In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 15-1195

MERRY GENTLEMAN, LLC,

*Plaintiff-Appellant,*

*v.*

GEORGE AND LEONA PRODUCTIONS, INC.
and MICHAEL KEATON,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 2690 — **Gary Feinerman**, *Judge.*

———————————

ARGUED JUNE 4, 2015 — DECIDED AUGUST 25, 2015

———————————

Before BAUER, ROVNER, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Merry Gentleman, LLC
produced the motion picture *The Merry Gentleman*, which
was released in 2009. Despite some critical acclaim, the film
was a commercial flop. Merry Gentleman blames defendant
Michael Keaton, the film's lead actor and director, for the
bust. It brought this breach of contract action against Keaton
and defendant George and Leona Productions, Inc., Keaton's

"loan-out company" that he uses for professional contracting, alleging that Keaton violated his directing contract by (1) failing to prepare the first cut of the film in a timely fashion, (2) submitting a first cut that was incomplete, (3) submitting a revised cut that was not ready for the producers to watch, (4) communicating directly with officials at the Sundance Film Festival and threatening to boycott the festival if they did not accept his director's cut instead of the producers' preferred cut, (5) failing to cooperate with the producers during the post-production process, and (6) failing to promote the film adequately.

If the case were to go to trial, one might expect Keaton to dispute that any of these alleged breaches actually violated the directing contract. After all, Keaton completed the movie. It was accepted at the prestigious Sundance Film Festival. It received critical praise—Roger Ebert, for example, gave it 3.5 stars out of 4 and called it "original, absorbing and curiously moving." And the film's executive producer, Paul Duggan, admitted during his deposition that he was unaware of any director who did more publicity than Keaton did for a movie with a comparable budget.

Keaton moved for summary judgment, however, on the narrow ground that Merry Gentleman had failed to produce sufficient evidence that his alleged breaches of the directing contract caused it damages. For purposes of deciding this appeal, we must therefore assume as the district court did that Keaton in fact breached the contract.

Illinois law governs the directing contract. Under Illinois law, a "party injured by another's breach or repudiation of a contract usually seeks recovery in the form of damages based on his 'expectation interest,' which involves obtaining

the 'benefit of the bargain,' or his 'reliance interest,' which involves reimbursement for loss caused by reliance on a contract." *MC Baldwin Financial Co. v. DiMaggio, Rosario & Veraja, LLC*, 845 N.E.2d 22, 30 (Ill. App. 2006), quoting Restatement (Second) of Contracts § 344 (1981). The district court granted Keaton's motion for summary judgment, concluding that Merry Gentleman had failed to present a genuine issue of material fact on either damages theory.

First, the district court held that Merry Gentleman forfeited the expectation damages theory by not addressing it sufficiently in its response to summary judgment. *Merry Gentleman, LLC v. George & Leona Productions, Inc.*, 76 F. Supp. 3d 756, 761 (N.D. Ill. 2014). Merry Gentleman does not dispute this conclusion on appeal, so expectation damages are out.

Second, the district court held that Merry Gentleman failed to produce evidence from which a reasonable trier of fact could find that Keaton's alleged breaches caused the damages Merry Gentleman seeks: all $5.5 million it spent producing the movie. *Id.* at 761–66. This holding is the focus of Merry Gentleman's appeal.

We review the grant of summary judgment *de novo*, reviewing the record in the light most favorable to Merry Gentleman, as the non-moving party, and drawing all reasonable inferences in its favor. E.g., *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, — F.3d —, —, 2015 WL 4509935, at *2 (7th Cir. 2015). Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Illinois follows the approach of § 349 of the Restatement (Second) of Contracts (1981), which provides that as an alternative to expectation damages, "the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed." See, e.g., *Herbert W. Jaeger & Associates v. Slovak American Charitable Ass'n*, 507 N.E.2d 863, 868 (Ill. App. 1987) (discussing § 349). Reliance damages are designed to put the injured party "in as good a position as [the injured party] would have been in had the contract not been made." Restatement (Second) of Contracts § 344; *MC Baldwin Financial*, 845 N.E.2d at 30 (discussing § 344); *Designer Direct, Inc. v. DeForest Redevelopment Auth.*, 313 F.3d 1036, 1049 (7th Cir. 2002) (same).

Merry Gentleman argues that the district court required too much when it held that Merry Gentleman failed to establish a causal connection between its expenditures on the film and Keaton's alleged breaches. The causation standard is minimal when the injured party seeks reliance damages under § 349, Merry Gentleman contends, and it cleared this low hurdle when it submitted an affidavit from Duggan stating that the production company spent over $5 million in reliance on the directing contract. Once it produced that evidence, Merry Gentleman continues, the burden shifted to Keaton to prove that the production company would have suffered the alleged losses even if Keaton had fully performed. And because Keaton did not submit evidence with his motion for summary judgment showing beyond reasonable dispute that these losses were inevitable, summary

judgment against Merry Gentleman was improper. Or so goes the argument.

We agree with Merry Gentleman that a party seeking reliance damages under § 349 has a relatively low bar to clear to establish causation and that once it makes this showing, the burden shifts to the breaching party to prove any reduction in those damages. This causation threshold is low because the injured party is forced to prove a counterfactual: what would have happened if the contract had not been signed in the first place. See *Autotrol Corp. v. Continental Water Systems Corp.*, 918 F.2d 689, 695 (7th Cir. 1990). Proving this kind of counterfactual is difficult because the value of performance can be so difficult to establish. That is especially true in cases where the injured party is seeking reliance damages. If damages were easy to calculate, the injured party likely would have sought expectation damages to begin with on a benefit-of-the-bargain theory under § 347. Reliance damages are appropriate precisely because the injured party is at an evidentiary disadvantage. Cf. Restatement (Second) of Contracts § 349, cmt. a (1981) (reliance damages are appropriate where the injured party "cannot prove his profit with reasonable certainty"). That is why courts use the burden-shifting framework of § 349. As Judge Hand explained long ago:

> It is often very hard to learn what the value of the performance would have been; and it is a common expedient, and a just one, in such situations to put the peril of the answer upon that party who by his wrong has made the issue relevant to the rights of the other. On principle therefore the proper solution would seem to be

> that the promisee may recover his outlay in preparation for the performance, subject to the privilege of the promisor to reduce it by as much as he can show that the promisee would have lost, if the contract had been performed.

*L. Albert & Son v. Armstrong Rubber Co.*, 178 F.2d 182, 189 (2d Cir. 1949) (footnote omitted).

The burden does not shift to the breaching party until the injured party first satisfies this threshold showing of causation, however. And just because the causation threshold under § 349 is low does not mean it is not there, as Merry Gentleman seems to suggest. To oppose summary judgment on this point, the injured party must still produce evidence sufficient to permit a reasonable trier of fact to find that the losses claimed were caused by the breach. See *Spitz v. Proven Winners North America, LLC*, 759 F.3d 724, 730 (7th Cir. 2014) ("To prevail on a breach of contract claim, a plaintiff must establish the existence of a valid and enforceable contract, plaintiff's performance, defendant's breach of the terms of the contract, and damages *resulting from the breach*.") (emphasis added); *Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E.2d 801, 832 (Ill. 2005) ("basic theory of damages for breach of contract" requires plaintiff to prove "an actual loss or measurable damages *resulting from the breach* in order to recover") (emphasis added); see also *Old Stone Corp. v. United States*, 450 F.3d 1360, 1375 (Fed. Cir. 2006) ("[R]eliance damages are subject to two pertinent limitations—the damages must have been both proximately caused by the breach, and foreseeable.").

In the typical case where reliance damages are sought, the defendant has simply repudiated the contract and

walked away from the deal. This causal link will be straight-forward in those cases. As the district court explained, in such cases the non-breaching plaintiff is left "holding the bag after having made its expenditures." *Merry Gentleman*, 76 F. Supp. 3d at 763. In those cases, it is appropriate for the injured party to claim as damages all expenditures it made in preparation for performance because the other side failed to perform at all. In such cases, the complete loss of investment will often be the proximate result of the breach.

But in cases like this one, where the breaching party has substantially performed and the alleged breaches have to do with the quality of the final product, the causal link between reliance damages and the breach is not so direct. An injured party cannot reasonably claim that *all* of its expenditures were caused by the other party's breach without some reason to think the breach destroyed the entire value of the breaching party's performance. In this context, the breach does not cause the complete loss of investment.

Take this case, for example. Who can say why a critically praised movie did not make money? Merry Gentleman claims as damages all $5.5 million it spent to produce the movie. If Keaton had somehow prevented completion of the movie, Merry Gentleman might well have been entitled to all expenditures made in preparation for his performance (subject, of course, to the "losing contract" limitation in § 349). But here, Keaton actually made the movie. Merry Gentleman complains that Keaton slowed down the production process and failed to publicize the movie adequately after it was finished. No doubt, these services have economic value and, on a proper showing, Merry Gentleman might have been entitled to recover damages for these shortcomings. (Imagine,

for instance, if Keaton's tardiness in submitting the first cut forced Merry Gentleman to pay the film editors for a longer period. Or, to take a more extreme example, imagine if Keaton had publicly criticized the film released to theaters so harshly that no one bought tickets to see it.) But no reasonable trier of fact could find that Merry Gentleman lost its entire investment of $5.5 million because Keaton failed to submit his first cut on time or failed to publicize the movie better. Merry Gentleman entered the directing contract to have Keaton deliver a finished movie, and he delivered one that showed well at Sundance and won some critical praise. The breaches by Keaton that Merry Gentleman alleges cannot reasonably be said to have rendered the investment completely worthless.

The fundamental problem we have been describing is that Merry Gentleman's damages theory is completely insensitive to the importance and severity of Keaton's alleged breaches. This is how Merry Gentleman explained its damages theory in opposing summary judgment:

> Keaton's actions were in breach of his contract, and caused damage to MG LLC in that it was unable to screen and market the film of its choosing (as was its contractual right); in that it endured substantial additional costs; and in that in reliance on its expectation that Keaton would satisfy his contractual obligations, it spent millions of dollars to finance Keaton's temper tantrum, money it never would have expended if it had been aware of Keaton's unwillingness to conform his behavior to his contractual obligations.

That's it. Merry Gentleman did not explain how Keaton's cut differed from "the film of its choosing." Nor did it explain how that difference caused it damage. It did not identify what it meant by "substantial additional costs." And the last claim—that it never would have signed the contract if it had known that Keaton would breach—is something almost any plaintiff can say in a breach-of-contract dispute.

The only evidence Merry Gentleman cited in support of these conclusory assertions were the following facts:

> MG LLC spent over $5 million to produce the film, the vast majority of which was spent after Keaton entered into his directorial contract.

> Had MG LLC known that Keaton would fail to meet his contractual obligations as a director, including honoring MG LLC's right to "sole discretion" over "business and creative decisions," it would not have entered into the directorial contract with him, nor would it have expended millions of dollars with Keaton as the director.

Dkt. No. 79 at 24, ¶¶ 121–22 (internal record citations omitted). Again, Merry Gentleman made no effort to establish any causal connection between the particular breaches asserted—the failure to submit a first cut on time, submitting a revised cut that was incomplete, failing to publicize the film better, etc.—and the $5.5 million that Merry Gentleman spent on the production process as a whole.[1]

---

[1] One of the most troubling aspects of Merry Gentleman's theory here is evident from the disparity between the price Merry Gentleman agreed to pay Keaton under the directing contract ($100,000) and the

We agree with the district court that Merry Gentleman, in seeking $5.5 million in reliance damages, "effectively wants to shift the entire cost—and risk—of producing *The Merry Gentleman* to Keaton for his alleged breaches, giving it a windfall and placing it in a *better* position than it would have been in had the contract never been signed." *Merry Gentleman*, 76 F. Supp. 3d at 766. Reliance damages are not insurance. Courts "will not 'knowingly put the plaintiff [receiving a reliance recovery] in a better position than he would have occupied had the contract been fully performed.'" *Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729 (2d Cir. 1992), quoting L.L. Fuller & William R. Perdue, Jr., *The Reliance Interest in Contract Damages: 1*, 46 Yale L.J. 52, 79 (1936); see also, e.g., *V.S. Int'l, S.A. v. Boyden World Corp.*, 862 F. Supp. 1188, 1198 (S.D.N.Y. 1994) (assuming for sake of argument that defendant breached contract but declining to award reliance damages: "Based on plaintiffs continued running of a successful business, any compensation for these initial expenses would not place plaintiffs in the same position as they were prior to the execution of the contract, as reliance damages are intended to do, but would instead constitute a windfall for plaintiffs.").

As noted, we must assume here that Keaton breached the $100,000 contract as alleged, but these alleged breaches did

damages Merry Gentleman seeks ($5,500,000). Comment a to § 349 of the Restatement (Second) of Contracts (1981) teaches: "If the injured party's expenditures exceed the contract price, it is clear that at least to the extent of the excess, there would have been a loss. For this reason, recovery for expenditures under the rule stated in this section may not exceed the full contract price." The relevant contract price here would seem to be the price for the contract that was breached, which would be $100,000. Nevertheless, we do not need to depend on that theory to affirm here.

not render his performance completely worthless. He directed the movie, it was accepted by Sundance, and it was released to the public. Reimbursing Merry Gentleman for all $5.5 million it spent, even though it received from Keaton a finished film praised by critics, would put it in a better position than if the contract had not been made. Perhaps Merry Gentleman might have been able to present a genuine issue for trial on a more modest damages theory, but it decided to shoot for the moon and missed. A reasonable trier of fact could not find that Keaton's alleged breaches caused Merry Gentleman to sustain $5.5 million in damages.[2]

The district court's judgment is AFFIRMED.

---

[2] Merry Gentleman's contention that Keaton forfeited the argument that Merry Gentleman failed to establish causation is meritless. Keaton attacked both possible damages theories simultaneously. The district court did not abuse its discretion in considering his method of framing the argument sufficient to raise the issue. See *Merry Gentleman*, 76 F. Supp. 3d at 761 n.*.