In the

# United States Court of Appeals
### For the Seventh Circuit

No. 23-2929

JASON BECKNER and JODI BECKNER,

*Plaintiffs-Appellants*,

*v.*

MAXIM CRANE WORKS, L.P.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:21-cv-01395-SEB-TAB — **Sarah Evans Barker**, *Judge*.

ARGUED JUNE 5, 2024 — DECIDED JULY 30, 2024

Before EASTERBROOK, BRENNAN, and JACKSON-AKIWUMI,
*Circuit Judges*.

PER CURIAM. Jason Beckner worked for Commercial Air,
Inc. constructing a home. To lift trusses onto the roof, Commercial Air rented a crane for one day from Maxim Crane
Works, L.P., which provided the crane, equipment, and an
operator. Beckner contends that the operator injured him, and
he sued Maxim Crane for negligence, under a theory of vicarious liability.

Indiana's Worker's Compensation Act is the exclusive civil remedy for an employee injured by an employer or co-employee. IND. CODE § 22-3-2-6. The parties agree that if the crane operator and Beckner were both employees of Commercial Air, then the Act bars Beckner's tort suit against Maxim Crane.

The district court ruled at summary judgment that the crane operator was also employed by Commercial Air and was therefore Beckner's co-employee. Because that question is fact-based and genuinely disputed, we vacate the judgment and remand this case to resolve fact issues.

## I

### A. Factual Background

In reviewing summary judgment, we construe the record in the light most favorable to the non-moving parties, the Beckners. *Perez v. K & B Transp., Inc.*, 967 F.3d 651, 653 (7th Cir. 2020).

In November 2019, Beckner worked for Commercial Air at a jobsite constructing a home in Zionsville, Indiana. Commercial Air contacted Maxim Crane to rent a crane for one day to lift roof trusses. Commercial Air signed a short-term service agreement for a crane, equipment, and crane operator. The agreement contains provisions that Maxim Crane submits are relevant to the question of who employed the crane operator. First, the contract provides that "[i]f Equipment is furnished with an operator, the services of such operator will be performed under the complete direction and control of Customer and operator shall be considered Customer's employee for all purposes other than the payment of wages, worker's compensation, and their benefits." Second, it states that "the

Equipment and all persons operating or maintaining such Equipment, including Maxim's employees, agents or independent contractors, are under Customer's exclusive jurisdiction, possession, supervision, and control." Commercial Air maintains that the crane operator's conduct and manual are also relevant to the question of who employed him.

On November 11, 2019, Maxim Crane dispatched a crane, rigging equipment, and one of its employees, Emmitt Pugh, to operate the crane for a single day. Pugh arrived on a schedule different from the Commercial Air employees. After reaching the job site, he advised a Commercial Air supervisor how to rig the trusses with the crane. After this discussion, workers strapped individual trusses to the crane's hook so that Pugh, with the help of a signalman, could lift them onto the roof, where other workers unhooked the load and installed it.

Pugh operated the crane alone. He did so faster than the Commercial Air employees wanted. The Commercial Air supervisor testified that trusses were "smack[ing]" into each other and that workers on the roof worried that someone "[was] going to get hurt." The supervisor told Pugh to slow down, but he kept returning to his chosen, higher speed. Mid-lift, Pugh stopped momentarily to suggest that the workers reinforce the already-installed trusses with some cross-bracing. Consistent with Pugh's conduct, the crane operator manual he used gave him the sole power "to stop and refuse to lift loads until safety is assured." The manual said the crane operator was "the only one who can be relied upon to assure the safety of yourself and those around you."

Beckner was injured at the end of the day. After most trusses had been set, Commercial Air's supervisor told Pugh

that work at the site was ending because of high winds. Pugh exited the crane and began breaking it down on his own. A gust of wind caused some trusses to collapse and to trap two Commercial Air employees, including Beckner. A Commercial Air employee asked Pugh to set the crane back up to free the trapped workers, which Pugh did by himself. The local fire chief arrived just before Pugh left. Although Pugh had fully deconstructed the crane again, the fire chief asked Pugh to set the crane back up to lower Beckner to the ground, which Pugh did, also alone.

### B.  Procedural History

Beckner, a citizen of Indiana, sued Maxim Crane and other related entities in Indiana state court, claiming negligence. He sought to recover for his injuries, medical costs, and lost wages; his wife also sued for loss of consortium. The defendants—citizens of Delaware, Pennsylvania, and New York—removed the case to federal court on the basis of diversity jurisdiction. *See* 28 U.S.C. § 1441(b). The parties later agreed to dismiss all defendants except Maxim Crane.

Maxim Crane filed two motions. First, it moved to dismiss the suit for lack of subject-matter jurisdiction. It argued that, because Pugh was co-employed by Maxim Crane and Commercial Air, Beckner's exclusive remedy was under Indiana's Worker's Compensation Act. *See* IND. CODE §§ 22-3-2-6, -13. The Beckners responded that Commercial Air did not employ Pugh. While that motion was pending, Maxim Crane moved for summary judgment, reiterating that Commercial Air also employed Pugh and adding that it was not negligent. The Beckners responded by incorporating their arguments on the (still-pending) motion to dismiss that Commercial Air did not employ Pugh and by fleshing out their negligence claim.

The district court ruled on both motions. First, it decided that the exclusivity of the Worker's Compensation Act affected the merits, not jurisdiction. Later, the court ruled that under Indiana law Pugh and Beckner both worked for Commercial Air, so Beckner's exclusive remedy was the Act. The court applied a seven-factor test to assess whether Commercial Air employed Pugh. *See Hale v. Kemp*, 579 N.E.2d 63, 67 (Ind. 1991). The factors are: "(1) the right to discharge; (2) the mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and (7) establishment of the work boundaries." *Id.* The court reasoned, and the parties agree, that the second, third, and sixth factors favor the Beckners: Commercial Air did not pay Pugh, supply his equipment, or use his services for long. But to the district court, the remaining factors—including the fifth, which Indiana deems the most important, of "control"—favored Maxim Crane. The Beckners appeal the district court's decision.

## II

### A. Preliminary Issues

Before reaching the merits of the parties' arguments, we discuss three threshold questions: which test applies to decide if Commercial Air employed Pugh; whether the existence of an employment relationship is a question of law or fact; and whether, in response to Maxim Crane's summary judgment motion, the Beckners waived any argument that they seek to raise here.

We begin by considering the proper test to apply. The Indiana Supreme Court has formulated two similar tests for a

case of this type: a seven-factor test to determine the existence of an employer-employee relationship, *Hale*, 579 N.E.2d at 67, and a ten-factor test that distinguishes between an employee and an independent contractor, *Moberly v. Day*, 757 N.E.2d 1007, 1010 (Ind. 2001). The district court and Maxim Crane both say the *Hale* test is better. The Beckners prefer the *Moberly* test. Although we think that the *Hale* test better tracks the co-employee question at the heart of this case, we apply both. Ultimately the choice of test does not determine the outcome of this appeal.

Next we look at whether the existence of an employer-employee relationship is a question of fact or law. The answer turns on the jurisdictional basis of the suit. In a diversity case like this, the "'fixing of the boundary between questions of law and questions of fact' is a matter of federal procedural law, not state substantive law." *Jadair Int'l, Inc. v. Am. Nat'l Prop. & Cas. Co.*, 77 F.4th 546, 552 n.4 (7th Cir. 2023) (quoting *Dilworth v. Dudley*, 75 F.3d 307, 309 (7th Cir. 1996)); *see also Reynolds v. Henderson & Lyman*, 903 F.3d 693, 697 (7th Cir. 2018) (citing *Byrd v. Blue Ridge Rural Elec. Co-op, Inc.*, 356 U.S. 525, 538–39 (1958)) ("[S]tate law does not dictate the allocation of tasks between the judge and the jury in a federal court.").

The existence of an agency relationship—of which an employer-employee relationship is one kind, *see Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724, 731 (7th Cir. 2014)—is a mixed question of fact and law. *See Simpkins v. DuPage Hous. Auth.*, 893 F.3d 962, 965 (7th Cir. 2018). To decide whether such a relationship exists, a court weighs the effect of multiple factors. When it does so, however, by resolving disputed facts in the moving party's favor (in this case, Maxim Crane), then

it has legally erred in how it should view the facts at summary judgment. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986). And here, there is not a factual dispute about a factor on the margins. Instead, genuine disputes are present as to factors that materially affect the existence of an employer-employee relationship. A reasonable jury could rule in the Beckners' favor by deciding that Commercial Air does not employ Pugh.

Maxim Crane does not contend that a factfinder may never decide whether an employee (such as Pugh) was co-employed by another company (like Commercial Air). Rather, Maxim Crane appears to argue only that a court *may* decide the issue in the absence of disputed material facts. But, as we discuss later, the record here contains factual disputes about who "controlled" Pugh (the important fifth *Hale* factor) and whether Commercial Air had a "belief" that it employed Pugh (the fourth *Hale* factor). A factfinder therefore must resolve these disputes by assessing the credibility of the evidence on those factors before it can be determined whether Commercial Air employed Pugh.

Maxim Crane also contends that at summary judgment the Beckners failed to raise their current appellate arguments, and therefore waived those arguments for appeal. At the same time, Maxim Crane argues that the Beckners violated Southern District of Indiana Local Rule 56-1 by failing to identify or designate specific material facts that precluded summary judgment. We disagree with Maxim Crane. The evidence supporting the Beckners' response to Maxim Crane's summary judgment motion was properly in the record and before the court through their response to Maxim Crane's motion to dismiss. And that motion to dismiss was still pending

when Maxim Crane moved for summary judgment. Local Rule 56-1 required the Beckners to "serve a response brief and any evidence (that is not already in the record)." No provision in that local rule dictates that the Beckners had to repeat the arguments and recite the evidence they had already offered and which were pending before the district court. Indeed, in their summary judgment response, the Beckners referred the court to their motion to dismiss briefing by citing the proper docket numbers. By doing so the Beckners did not require the district court to search the record. *Cf.* S.D. IND. L.R. 56-1(h). We enforce the waiver of an appellate argument when a party otherwise would be prejudiced by the lack of notice of that argument. *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 913 (7th Cir. 2011). But Maxim Crane does not persuade us that it was unaware of the position the Beckners now advance on appeal.

### B. Merits

We next consider whether this case presents fact disputes about whether Commercial Air employed Pugh. Again, we view the facts in the light most favorable to the Beckners, the non-moving parties. Summary judgment is appropriate when there is no genuine dispute of the material facts and "the record permits only one resolution of the factual issue." *Pullman-Standard v. Swint*, 456 U.S. 273, 292 (1982). *See generally U.S. Bank Nat'l Ass'n v. Village at Lakeridge, LLC*, 583 U.S. 387 (2018). Here, the question is whether Commercial Air employed Pugh.

The parties agree that the fifth factor of the *Hale* test—who had "control" over the crane's operation—is most important. *GKN Co. v. Magness*, 744 N.E.2d 397, 403 (Ind. 2001). Two documents provide conflicting statements about who controlled

the crane's operation here. Maxim Crane emphasizes that the service contract purported to give Commercial Air control over the crane's operation. The contract states that Pugh "shall be considered" Commercial Air's "employee" and that "the services of" the crane operator "will be performed under the complete direction and control of" Commercial Air. But as the Beckners point out, the crane operator's manual vested solely in Pugh, not Commercial Air, the power to "stop and refuse" to operate the crane to ensure safety. A factfinder must assess which of these two documents and conflicting statements about control governs these facts.

The parties' conduct, also factually disputed, yields competing answers on the question of control. In the Beckners' telling of events, Pugh came to the site with the requisite equipment after receiving dispatch orders from Maxim Crane, not Commercial Air; he arrived on a schedule different than Commercial Air's employees; and once there, he gave input on how to complete the lift. The Beckners add that Pugh operated the crane by himself and at his own fast pace, despite the opposition voiced by Commercial Air employees. Pugh even paused the lift—in the Beckners' view, another exercise of his control—to have workers on the roof consider installing cross-bracing. Maxim Crane disputes most of these facts and adds others. It contests whether Pugh arrived late, had any input, or disregarded the Commercial Air employees' admonition to slow down. Maxim Crane also adds that Commercial Air employees signaled to Pugh how to move the trusses and instructed him to stop work and later to reconfigure the crane so that Beckner could be freed.

Beyond these factual disputes, evidence on the fourth *Hale* factor—the "belief" about an employer-employee

relationship—is also in opposition. Again, the contract be-
tween the parties recites that Pugh "shall be considered" a
Commercial Air employee. But Pugh's dispatch from Maxim
Crane was for only one day of work, not a timeframe suggest-
ing that Commercial Air employed Pugh. As the Beckners
correctly note, "the fact that [a person] only worked … for one
day leads to the inference that he would not have believed
such a[n employment] relationship existed." *Verma v. D.T.
Carpentry, LLC*, 805 N.E.2d 430, 434 (Ind. Ct. App. 2004). A
factfinder thus must resolve these opposing inferences.

Although we conclude that under the *Hale* test a remand
is needed to resolve contested facts, we briefly consider
whether the result is the same under the *Moberly* test. Recall
that this test discerns whether a person is an employee or in-
dependent contractor. *Moberly*, 757 N.E.2d at 1010. We agree
with the Beckners that this test is relevant here because "em-
ployee" and "independent contractor" are mutually exclusive
statuses at common law. *See Couch v. United States*, 694 F.3d
852, 860 (7th Cir. 2012). Therefore, it would be contradictory
for the *Moberly* test to say that Pugh is an independent con-
tractor but for the *Hale* test to suggest that Commercial Air
employed him. The ten-factor *Moberly* test asks a court to ex-
amine:

> (a) the extent of control which, by the agree-
> ment, the master may exercise over the details
> of the work;
> (b) whether or not the one employed is engaged
> in a distinct occupation or business;
> (c) the kind of occupation, with reference to
> whether, in the locality, the work is usually

done under the direction of the employer or by
a specialist without supervision;
(d) the skill required in the particular occupa-
tion;
(e) whether the employer or the workman sup-
plies the instrumentalities, tools, and the place
of work for the person doing the work;
(f) the length of time for which the person is em-
ployed;
(g) the method of payment, whether by the time
or by the job;
(h) whether or not the work is a part of the reg-
ular business of the employer;
(i) whether or not the parties believe they are
creating the relation of master and servant; and
(j) whether the principal is or is not in business.

757 N.E.2d at 1010.

The fact disputes identified above also require a trial un-
der the *Moberly* test. Five of those factors—(a), (e), (f), (g), and
(i)—overlap with the *Hale* factors. Three more—(b), (d), and
(h)—also favor the Beckners under their view of the facts:
Commercial Air is primarily a heating, ventilation, and air
conditioning company with a regular business distinct from
Maxim Crane, a crane rental service. Commercial Air needed
to rent a crane, rigging equipment, and operator because its
own employees lacked the skills and equipment to operate a
crane. Only factor (c) undisputedly favors Maxim Crane be-
cause crane operation on construction projects typically oc-
curs under the supervision of a site superintendent. The last
factor, (j), appears irrelevant. Because the record permits a
conclusion under the *Moberly* test that Pugh is an independent

contractor (rather than an employee), this test reinforces the result that we reached under the *Hale* test.

### III

Genuine issues of material fact exist as to whether Pugh and Commercial Air had an employee-employer relationship. Accordingly, we VACATE the district court's judgment and REMAND this case for further proceedings to resolve those fact issues.